APPELL SHAPIRO, LLP
Scott E. Shapiro, Esq. (CSB #194352)
Sean J. Haddad, Esq. (CSB #293960)
15233 Ventura Boulevard, Suite 420
Sherman Oaks, California 91403
Telephone:    800-625-7710
Facsimile:    818-305-6295

Attorneys for Plaintiffs, THOMAS BURKE, and
                        GEORGE MARTIN, as Shareholder Derivative Claimants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| IN RE: SECURE MESSAGING SYSTEMS (BERUMDA) FKA RPOST INTERNATIONAL LIMITED, AND RPOST COMMUNICATIONS, LTD, SHAREHOLDER DERIVATIVE LITIGATION<br><br>        Defendants. | Case No.<br><br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMEN**T |

Plaintiffs THOMAS BURKE ("BURKE") and GEORGE MARTIN ("MARTIN")

(BURKE and MARTIN are collectively referred to as "Plaintiffs") allege as follows:

## I.    PARTIES

1.    Defendant ZAFAR KHAN is an individual, whose principal residence is in

Los Angeles County, California, and who at all times mentioned herein regularly conducted

Appell Shapiro, LLP
Attorneys at Law

business in the County of Los Angeles, California ("KHAN").  KAHN is a debtor in United States Bankruptcy Court, Central District of California, Case No. 2:13-bk-19713-WB) (the "KHAN Bankruptcy Proceeding").  At all times mentioned herein, KHAN was an officer of RPost and RComm, and was additionally a director of RPost and RComm through at least June, 2015.  Despite the claim that he has resigned as a Director of the RPost Companies (Plaintiffs have not yet been able to verify that claim made by the Defendants), KHAN remains an officer of the RPost Companies, and at all times mentioned herein was an officer of the RPost Companies.  The claims stated herein against KHAN are for post-bankruptcy petition conduct, as Plaintiffs are currently proceeding on claims against KHAN for pre-petition conduct by way of an adversary proceeding.

2.      Defendant TERRANCE TOMKOW is an individual, whose principal residence is in Los Angeles County, California, and who at all times mentioned herein regularly conducted business in the County of Los Angeles, California ("TOMKOW"). TOMKOW is a debtor in United States Bankruptcy Court, Central District of California, Case No. 2:13-bk-19712-WB) (the "TOMKOW Bankruptcy Proceeding").  At all times mentioned herein until at least in or about October 2013, TOMKOW was an officer and director of RPost and RComm.  KHAN claimed in or about October 2013 that TOMKOW resigned as a director of RPost.  Despite the claim that he has resigned as a Director of the RPost Companies (Plaintiffs have not yet been able to verify that claim made by the Defendants), TOMKOW remains as an officer of RPost and RComm, and at all times mentioned herein was an officer of the RPost Companies.  The claims stated herein against TOMKOW are for post-bankruptcy petition conduct, as Plaintiffs are currently proceeding

Appell Shapiro, LLP
Attorneys at Law

on claims against TOMKOW for pre-petition conduct by way of an adversary proceeding.

3.     Defendant SECURE MESSAGING SYSTEMS (BERMUDA), formerly known as RPOST INTERNATIONAL LIMITED ("RPost"), is, and at all times relevant herein was, a Bermuda Corporation conducting business (and with its principal place of business) in Los Angeles, County of Los Angeles, State of California, with the majority of its directors and officers being residents of the State of California.  RPost is sued as a necessary party in this shareholder derivative suit.

4.     Defendant RPOST COMMUNICATIONS LTD. ("RComm") is, and at all times relevant herein was, a Bermuda Corporation, conducting business (and with its principal place of business) in Los Angeles, County of Los Angeles, State of California, with the majority of its directors and officers being residents of the State of California. RComm is sued as a necessary party in this shareholder derivative suit.

5.     Defendant James Watlington ("WATLINGTON") is, and at all times relevant times herein was, the Corporate Secretary of both RPost and RComm.  Plaintiffs are informed and believe, and thereon allege, that WATLINGTON is a resident of Bermuda. WATLINGTON, at all times mentioned herein, is and was the corporate secretary for both RPost and RComm.

6.     Defendant Alexanders Management, LTD.  ("ALEXANDER MANAGEMENT") is, and at all relevant times mentioned herein, is and was a company, formed in Bermuda, with its principal place of business in Bermuda.  Plaintiffs are informed and believe, and thereon allege, that ALEXANDER MANAGEMENT is a company owned by WATLINGTON's family, at all times mentioned herein operated by WATLINGTON.

Appell Shapiro, LLP
Attorneys at Law

7.      Defendant Mark Readinger ("READINGER") is an individual.  Plaintiff is informed and believes that READINGER is a resident of Wisconsin.  READINGER is, and at all times mentioned herein was, a Director of RComm.

8.      Defendant Carole Kretchman ("KRECHMAN") is an individual.  Plaintiff is informed and believes that KRECHMAN is a resident of California. KRECHMAN is, and at all times mentioned herein was, a Director of RComm.

9.      KHAN, TOMKOW, WATLINGTON, READINGER, and KRECHMAN are hereinafter referred to collectively as the "Individual Defendants" or "director Defendants" (excluding WATLINGTON when referencing the director Defendants).

10.     Plaintiffs are informed and believe, and on that basis allege, that KHAN and TOMKOW, are the two largest common shareholders of RPost, and were both the only officers and directors of RPost until in or about October 2013 when TOMKOW purportedly resigned and KHAN became the sole officer and director for RPost.

11.     Plaintiff THOMAS BURKE is, and at all times mentioned in this pleading was, and remains, a shareholder of record of RPost.  Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, despite failing to follow corporate formalities in the formation of RComm, including as to providing necessary notice and voting procedures to Burke and all other RPost shareholders, contend that BURKE solely is a shareholder of RComm.  BURKE is an adequate representative of all other RPost and RComm shareholders.  Plaintiff BURKE is, and at all times relevant herein, was a resident of London, United Kingdom.

Appell Shapiro, LLP
Attorneys at Law

- 4 -

12.      Plaintiff GEORGE MARTIN is, and at all times mentioned in this pleading was, and remains, a common shareholder of record of RPost.  MARTIN is an adequate representative of all other RPost common shareholders.  Plaintiff MARTIN is, and at all relevant times herein was, a resident of Madison, New Jersey.

## A. JURISDICTION (DUAL: BASED ON A FEDERAL QUESTION AND DIVERSITY JURISDICTION) AND VENUE

13.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 in that this Complaint presents a federal question.

14.      Additionally, Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs. Accordingly, This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2).

15.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

16.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) the RPost Companies are headquartered in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein had an impact on this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## B. INTRADISTRICT ASSIGNMENT

17.      This action is properly assigned to the Western Division of this Court.

Appell Shapiro, LLP
Attorneys at Law

### C. ALTER-EGO, SINGLE ENTERPRISE, AND JOINT VENTURE ALLEGATIONS REGARDING RPOST AND RCOMM

18.     Defendant RComm is, and at all times herein mentioned was, the alter-ego of Defendant RPost. Defendant RComm was conceived, intended, and used by controlling shareholders Defendants KHAN and TOMKOW, and those acting in concert with them, as a device to avoid discovery of KHAN's and TOMKOW's fraudulent conduct and concealment, including without limitation as alleged herein, which harmed RPost and RComm. Defendant RComm was improperly formed by the KHAN and TOMKOW, without required notice to, and voting by, all RPost shareholders.  Plaintiff is informed and believes, and thereon alleges, that at no time after Defendant RComm became incorporated was any stock properly authorized to be issued or properly issued to RPost shareholders who purportedly were to receive RComm shares.

19.     As to the RPost shareholders, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants RPost and RComm, such that any individuality and separateness between RPost and RComm has ceased.

20.     Adherence to the fiction of the separate existence of RComm would permit an abuse of the corporate privilege and would sanction fraud or promote injustice in that Defendants KHAN and TOMKOW created RComm to conceal their fraudulent conduct including without limitation as alleged herein.

21.     Alleged alternatively, RPost and RComm were operated in a form and manner, as between them, that was, and continues to be, a joint enterprise, single enterprise or joint-venture.

Appell Shapiro, LLP
Attorneys at Law

22.     RPost and RComm are hereinafter collectively referred to as the "RPost Companies."

## II.     GENERAL SHAREHOLDER DERIVATIVE CLAIM ALLEGATIONS

23.     Plaintiffs bring this action derivatively in the right and for the benefit of RPost Companies to redress injuries suffered, and to be suffered, by RPost Companies as a direct result of the Individual Defendants' violations of federal law, state law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof.

24.     Plaintiffs were shareholders of RPost Companies at the time of the continuing wrong of which they complain. Since becoming shareholders, Plaintiffs have continuously been shareholders of the RPost Companies.

25.     Plaintiffs will adequately and fairly represent the interests of the RPost Companies in enforcing and prosecuting the RPost Companies' rights.

### D. THE BARTON CLAIMS, AND STATE COURT'S FINDING OF FRAUD BY KHAN AND TOMKOW IN CONNECTION WITH THEIR DUTIES AS OFFICERS AND DIRECTORS OF RPOST

26.     Kenneth Barton is a co-founder of RPost who sued KHAN and TOMKOW in the Los Angeles Superior Court Case entitled, _Kenneth Barton v. RPost International Limited, Zafar Khan, Terrance Tomkow, et al._, Case No. YC061581 (the "Barton State Court Action").  In the Barton State Court Action and after a full trial on the merits, the Trial Court entered its Statement of Decision ("SOD") (Ex. "B") and its Ruling on Punitive Damages and Revisions to Statement of Decision ("RPD") (Ex. "C").

Appell Shapiro, LLP
Attorneys at Law

27.     In the Barton State Court Action, the Trial Court, after consideration of all the admitted testimonial and documentary evidence, determined and adjudged that KHAN and TOMKOW, and RPost as a result of KHAN's and TOMKOW's conduct, committed fraud and intentional breaches of fiduciary duty and unlawfully converted property (Barton's 6,016,500 common shares in RPost ("Barton's Shares"), among other wrongful acts, all of which was adjudged to have caused substantial harm to Barton.

28.     During the course of the trial of the Barton State Court Action, KHAN admitted to having committed fraud by taking Barton's signatures on original RPost corporate resolutions dated in 2001 and then affixing those Barton signatures on purported "amended" resolutions several years later, which "amended" resolutions were "created" long after Barton's tenure as an officer/director of RPost had ended and were "amended" resolutions that Barton had never seen, reviewed or approved.  Reporter's Transcript, 03/09/12, pg. 49:26-50:15.  A true and correct copy of the pertinent portion of the Reporter's Transcript of Proceedings in the Barton State Court Action on March 9, 2012 is attached hereto and incorporated fully herein, as Exhibit A.

29.     On or about August 3, 2012, the Trial Court in the Barton State Court Action issued its SOD, a true and correct copy of which is attached hereto as Exhibit B, wherein it stated that "Defendants RPost International Limited, TOMKOW and KHAN unlawfully converted [Barton's] shares of stock" (Ex. B at p. 3:4-6) and that "The evidence also supports the conclusion that Plaintiffs has met his burden of proof on the Fraud, Breach of Fiduciary Duty and Business & Professions Code 17200 causes of action." (Ex. B, p. 5:1-3). In so finding, the Trial Court also noted that, cognizant of KHAN's aforementioned

Appell Shapiro, LLP
Attorneys at Law

admissions of affixing Barton's signature to amended documents that Barton had never even seen let alone approved, that "…**the defendants also retroactively created and modified corporate resolutions to re-create the history supporting the result they sought."** Ex. B, p. 5:5-6. (emphasis added).

30.     The Trial Court further concluded in its SOD that Barton "…**has proven by clear and convincing evidence that the actions of RPost International Limited, TOMKOW and KHAN were done with malice, oppression and fraud, giving rise to a claim for punitive damages.**" Ex. B, p. 10:1-4. (emphasis added).

31.     On or about June 18, 2013, following the punitive damages phase of trial in November 2012 and the appointment of and April 2013 testimony and reports from a court-appointed expert witness regarding the valuation of common stock in RPost (as of June 2009), the Trial Court issued its RPD, a true and correct copy of which as attached hereto as Exhibit C and fully incorporated herein.

32.     In light of the evidence the Trial Court received in the November 2012 punitive damages phase regarding transfers of RPost assets engineered by KHAN and TOMKOW, the Trial Court concluded that the return to Barton of his 6,016,500 common shares in RPost would be inequitable and that the Trial Court would, instead, proceed to determine and issue a monetary award (in lieu of the return of the shares to Barton) following a determination of the value of Barton's Shares as of the conversion date. Thereafter, the Trial Court determined that RPost common stock was worth $.64 per share as of June 2009 (the date the Trial Court held that Barton's Shares were converted by KHAN, TOMKOW and RPost).  Accordingly, through its RPD, the Trial Court modified its SOD to

Appell Shapiro, LLP
Attorneys at Law

determine that Barton was entitled to, among other relief, a monetary award against KHAN, TOMKOW and RPost (based on the June 2009 value of the converted shares) in the amount of $3,850,560.00, less a $10,500.00 credit.  The Trial Court further held in its RPD that Barton was awarded punitive damages from KHAN in the amount of $250,000 and from TOMKOW in the amount of $150,000, and that each remained liable to Barton for $100,000 in emotional distress damages awarded in the SOD.

33.     On or about April 14, 2013, on the eve of the Los Angeles Superior Court's issuing its monetary damages decision against RPost, KHAN and TOMKOW (and awarding punitive damages due to the fraudulent and malicious conduct), KHAN and TOMKOW filed bankruptcy petitions (Chapter 13), KHAN in the United States Bankruptcy Court in Los Angeles, Case No. 2:13-bk-19713-VZ and TOMKOW in the Tomkow Bankruptcy Proceeding.  KHAN's and TOMKOW's bankruptcy petitions and schedules, in addition to being materially false and misleading in various respects, failed to identify RPost as a material creditor or potential material creditor despite the fact it had become obvious that KHAN and TOMKOW owed RPost millions of dollars in created liability, and unreimbursed legal expenses and costs which were not bonded, although required to be bonded pursuant to RPost's bylaws.

34.     Relief of stay was obtained by Barton, and on August 30, 2013, the Trial Court then issued a Judgment on the Barton claims (hereinafter the "Barton Judgment"), a true and correct copy of which is attached hereto as Exhibit D.

35.     The Barton Judgment, and the sums of money involved in the Barton case, including the defense costs whereby defense insurance policies were invoked and apparently

Appell Shapiro, LLP
Attorneys at Law

exhausted, were material in nature and cannot now, and could not then, have reasonably been characterized as "nuisance suits," given the specificity and gravity of Barton's claims and the scale of potential awards.

36.    As such, the litigation and its risks should have been properly, timely and fully disclosed to all shareholders and prospective shareholders, along with the full disclosure of the conflicts of interest, actual and expected, given KHAN's and TOMKOW's alleged engineering of the fraudulent corporate records, their presentation to the Court of that patently problematic document, and the likelihood that said parties' fraud jeopardized the interests of the shareholders and necessitated independent advice and the recusal of said persons from the corporations' decision making process.  Instead, none of the members of the RPost nor RComm boards of directors provided proper, timely or full disclosures of the litigation and underlying facts and circumstances but, instead, did and continue to conceal the same from existing and prospective shareholders, including without limitation in the FINANCING MEMORANDUM referred to below.

37.    As additional breaches of their fiduciary duties to shareholders, KHAN, TOMKOW, and the boards of directors of RPost and RComm, regularly and intentionally prevented Plaintiffs from having access to shareholder meetings including because they knew Plaintiffs would voice concerns about their conduct, and concerns about RPost's and RComm's continuing failure to provide audited financial statements and transparency in the handling of RPost's and RComm's affairs.

38.    Plaintiffs are informed and believe, and thereon allege, that the boards of directors of RPost and RComm have failed to take any action to prohibit KHAN and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

Appell Shapiro, LLP
Attorneys at Law

Appell Shapiro, LLP
Attorneys at Law

TOMKOW from using any corporate assets and/or funds to pay, directly or indirectly, their bankruptcy legal fees and costs, and legal fees and costs in the Barton case, even though KHAN and TOMKOW have been found to have committed fraud in their fiduciary capacities while working for RPost.

39.    Additionally, RPost and RComm have legal claims against KHAN and TOMKOW for indemnity and defense, including with respect to all damages caused to the corporations as a result of KHAN's and TOMKOW's actions, including without limitation: a) the adjudged monetary claims of Barton for the fraudulent taking of his shares (approximately $3.8M plus interest and other fees and costs that increase said sum to potentially over $5M to $6M), b) the legal fees incurred in the defense of those claims, and c) any and all shares which KHAN and TOMKOW allowed RPost to grant or issue to RPost's counsel (when payment of fees for said counsel was already depleting RPost's insurance policy), among other damages.

40.    Yet, the boards of directors have failed to take any action against KHAN and TOMKOW, forcing Plaintiffs to make those claims on behalf of RPost and RComm and to prosecute this and related claims to protect the RPost Companies.

41.    Such failures to act upon their fiduciary duties, constitute a breach of the fiduciary duties owed by the director Defendants to the RPost Companies.

**E.  THE TRANSFER OF 15 MILLION SHARES BY CORPORATE SECRETARY JAMES WATLINGTON TO ALEXANDERS MANAGEMENT LTD (A COMPANY OWEND BY WATLINGTON'S FAMILY AND CONTROLLED BY WATLINGTON), PURSUANT TO ZAFAR KAHN'S DIRECTION, PURPORTEDLY FOR AN "EMPLOYEE OPTION PLAN" THAT WAS NOT ONLY SECRETIVE BUT ALSO DIRECTLY CONTRADICTED THE ONLY ACTUALLY**

**DISCLOSED EMPLOYEE OPTION PLAN OF 3.3 MILLION SHARES.**

42.     In discovery obtained in KHAN's and TOMKOW's Bankruptcy Cases, specifically in the WATLINGTON deposition taken on January 28 2015, Plaintiffs discovered WATLINGTON issued, pursuant to KHAN's direction, 15,000,000 RComm common shares ("15 MILLION SHARES") to ALEXANDERS MANAGEMENT (WATLINGTON's controlled company) for no consideration when RComm was first formed, purportedly for an employee "option plan" (hereinafter the "WATLINGTON TRANSACTIONS").

43.     However, the issuance of those shares to ALEXANDERS MANAGEMENT for that purported employee option plan was actually hidden from all shareholders, and directly contradicted the written materials presented to the shareholders that only 3.3 Million shares were available for an employee option plan.

44.     The false representations, and non-disclosure, of material facts concerning the WATLINGTON TRANSACTIONS, were made to the RPost shareholders in the February 25, 2011 "Solicitation of Approval of Capitalization Plans" (hereinafter the "APPROVAL SOLICITATION") while soliciting RPost shareholders to approve a transition of preferred shareholders from RPost to RComm, and were thereafter also made, and continue to be made and exist, in the 2014 "CONFIDENTIAL BUSINESS PLAN AND STANDARD PREFERRED SHARE FINANCING MEMORANDUM" (hereinafter the "FINANCING MEMORANDUM"). Excerpts of the APPROVAL SOLICITATION, and redacted excerpts of the FINANCING MEMORANDUM, are attached hereto as Exhibits E and F, respectively.

Appell Shapiro, LLP
Attorneys at Law

45.     In the APPROVAL SOLICITATION, the 15,000,000 shares were not referred to as "employee options" or anything of the sort, and instead were represented to be issued shares.  Thus, the purported WATLINGTON TRANSACTIONS for an "employee option" plan directly contradicted the only "Options Authorized" referred to in the APPROVAL SOLICITATION, "3,300,000".  See Exhibit E, "Figure 4", "Summary Capitalization Table". Furthermore, there was no disclosure whatsoever to the shareholders that 15,000,000 common shares, which would provide effective control of RComm, would be issued to ALEXANDERS MANAGEMENT.

46.     Similarly, in the FINANCING MEMORANDUM, by which the Defendants have continued to seek money both from current investors and prospective investors, Defendants have continued to misrepresent that the only "employee option plan" is for "…3.3 million Common shares authorized pursuant to the Company's Share Option Plan." See Exhibit F, "Summary Capitalization Table".

## III.   FIDUCIARY DUTIES OF DEFENDANTS, AND BREACHES THEREOF.

### A.   FIDUCIARY DUTIES

47.     Each director and officer of the RPost Companies owes to RPost Companies and their shareholders the fiduciary duty to exercise good faith in the administration of the affairs of the RPost Companies and in the use and preservation of their company property and assets, and the highest obligations of fair dealing.

48.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of RPost Companies, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

Appell Shapiro, LLP
Attorneys at Law

49.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of RPost Companies, and was at all times acting within the course and scope of such agency.

50.     To discharge their duties, each of the Individual Defendants, as officers and/or directors of RPost Companies, was required to supervise the management, policies, practices and controls of the financial affairs of the RPost Companies in good faith. By virtue of such duties, the Individual Defendants were required to, among other things:

a.      Ensure that the RPost Companies complied with their legal obligations and requirements, including acting only within the scope of the RPost Companies' legal authority;

b.      Conduct the affairs of the RPost Companies in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business to avoid wasting the RPost Companies' assets; and

c.      Remain informed as to how the RPost Companies conducted their operations and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws and regulations.

51.     By reason of their positions as officers and/or directors of the RPost Companies and because of their ability to control the business and corporate affairs of the RPost Companies, Defendants owed and owe the RPost Companies and their shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to

Appell Shapiro, LLP
Attorneys at Law

use their utmost ability to control and manage the RPost Companies in a fair, just, honest, and equitable manner.

52.     Defendants were and are required to act in furtherance of the best interests of the RPost Companies and their shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, each officer and director of the Companies owes to the RPost Companies and their shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Companies and in the use and preservation of the companies' property and assets.

53.     Defendants, because of their positions of control and authority as officers and/or directors of the RPost Companies, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various disclosure statements issued by the RPost Companies.

54.     Because of their advisory, executive, managerial, and directorial positions with the RPost Companies, Defendants had access to non-public information about the RPost Companies' operations. While in possession of this material, non-public information, Defendants made improper representations, including with material non-disclosures, regarding the RPost Companies' business prospects, the Barton Judgment, findings of corporate fraud against Khan and Tomkow and ongoing litigation.

55.     At all times relevant hereto, each of Defendants was the agent of each of the other Defendants and of the RPost Companies, and was at all times acting within the course and scope of such agency.

Appell Shapiro, LLP
Attorneys at Law

## B.  BREACHES OF DUTIES

56.    Each Defendant, by virtue of his and his position as an officer and/or director, owed and owe to the Companies and to their shareholders the fiduciary duty of loyalty and the exercise of due care and diligence in the management and administration of the affairs of the Companies, as well as in the use and preservation of the RPost Companies' property and assets. Defendants' conduct complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the RPost Companies, the absence of good faith on their part, and a reckless disregard for their duties to the Companies and the Companies' shareholders that Defendants were aware or should have been aware posed a risk of serious injury to the Companies. The conduct of Defendants who were also officers and/or directors of the Companies have been unlawfully ratified by the remaining Defendants who collectively comprised all of the RPost Companies' Board.

57.    Defendants breached their duty of loyalty by actively causing the RPost Companies to make unlawfully misleading material statements to shareholders and prospective shareholders. Due to these Defendants' illegal actions and course of conduct, the RPost Companies wasted corporate assets and are now the subject of the Barton Judgment and related cases whereby Barton seeks collection on the Barton Judgment, which is accumulating additional interest at the legal rate in excess of $370,000 per year. Consequently, the Barton Judgment against RPost, which Barton also currently is seeking to be entered against RComm, exceeds $4.5M when taking into account post-judgment interest. As a result, the RPost Companies has expended, and will continue to expend, significant sums of money, including defending the Barton claims and Barton's attempts to impose the

Appell Shapiro, LLP
Attorneys at Law

1    same upon RComm.

2    ### C. DIRECTOR DEFENDANTS' FAILURES TO SEEK TO INVALIDATE PURPORTED MANAGEMENT AGREEMENTS AND PURPORTED SHARE RESTRICTIONS ASSERTED BY KHAN AND TOMKOW IN THE KHAN AND TOMKOW BANKRUPTIES, EFFORTS WHICH WOULD RESULT IN THE UNOBSTRUCTED SALE OF KHAN AND TOMKOW SHARES SO AS TO SATISFY THE BARTON JUDGMENT.

3

4

5

6

7    58.    KHAN and TOMKOW have claimed in their bankruptcies, along with the

8    conflicted director Defendants, that KHAN's and TOMKOW's shares were subject to share

9    restrictions that prevent the sale of those valuable assets, despite the fact the purported

10   "management agreements" signed by KHAN and TOMKOW for each other's benefit

11   constituted unlawful self-dealing, itself constituting a breach of KHAN's ant TOMKOW's

12   fiduciary duties.

13

14   59.    The director Defendants have failed and refused to have the RPost Companies

15   contest the purported share restrictions, and have instead insist that adjudged frauds KHAN

16   and TOMKOW must remain as officers of the RPost Companies, and that any insistence on

17   the sale of their shares will result in KHAN's and TOMKOW's employment resignations.

18

19   60.    The failure to the director Defendants to remove adjudged corporate frauds

20   KHAN and TOMKOW, and the director Defendants continued insistence that purported

21   share restrictions prohibit the sale of the shares by way of a trustee's sale, including with

22   sales to RPost Companies' shareholders, constitutes yet another breach of the director

23   Defendants' fiduciary duties, including without limitation the duties of care and loyalty.

24

25   61.    Instead of having KHAN's and TOMKOW's valuable shares (millions of share

26   estimated to be worth well over $10,000,000, even with conservative estimates, and without

27

28

Appell Shapiro, LLP
Attorneys at Law

using the $6.90 share price which RComm currently seeks from investors) in RPost and

RComm, which represent controlling shareholder interests, sold to satisfy the Barton

Judgment which would not have existed but for KHAN's and TOMKOW's fraud, the

director Defendants have insisted on requiring RPost to continue to be liable for Barton

Judgment.  Furthermore, the director Defendants have failed and refused, and continue to fail

and refuse, to notice all shareholders of the Barton Judgment, or  KHAN and TOMKOW

bankruptcies, and have also failed to put removal of the purported KHAN and TOMKOW

shareholder restrictions to a shareholder vote.

62.     If the KHAN and TOMKOW shares were sold without the cloud of purported

shareholder restrictions, those RPost and RComm shares would undoubtedly cover the debt

of RPost on the Barton Judgment caused by KHAN and TOMKOW. Furthermore, Barton

has continued his efforts to hold RComm liable for the Barton Judgment, under fraudulent

transfers claims, and thus RPost and RComm continue to expend hundreds of thousands of

dollars in attorneys' fees and costs defending such actions.  However, the director

Defendants have failed and refused to take necessary action to remove the cloud of the

purported shareholder restrictions, and to have those shares, currently held by bankruptcy

trustees for KHAN's and TOMKOW's bankruptcy estates, sold to satisfy the Barton

Judgment.

## D. CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

63.     In committing the wrongful acts alleged herein, the Individual Defendants

have pursued, or joined in the pursuit of, a common course of conduct, and have acted in

concert with and conspired with one another in furtherance of their common plan or design.

Appell Shapiro, LLP
Attorneys at Law

In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

64.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including actual and prospective (who thereafter became shareholders after the Barton Judgment) shareholders of the RPost Companies, regarding the Individual Defendants' management of the RPost Companies' operations and the prospects of the Companies' business; and (ii) enhance their executive and directorial positions at the Companies and the profits, power, and prestige that they enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, Defendants, collectively and individually, took the actions referred to in this Complaint.

65.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the Individual Defendants caused the Companies to issue improper financial documents, and unaudited financial statements which thereby failed to identify KHAN's and TOMKOW's unlawful post-bankruptcy petition conduct.

66.     The purpose and effect of Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Companies' operations, financial condition, and future business prospects.

Appell Shapiro, LLP
Attorneys at Law

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

67.     Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Companies to purposefully or recklessly release improper statements. Because the actions described herein occurred under the authority of the Board, each of Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

68.     Each Defendant aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

69.     The statements referenced above were each improper when made because they failed to disclose and misrepresented material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing.

### E. DEFENDANTS CAUSED SIGNIFICANT DAMAGES TO THE RPOST COMPANIES

70.     Further, as a direct and proximate result of Defendants' actions, the RPost Companies has expended, and will continue to expend, significant sums of money on the Barton Judgment and in defending Barton's efforts to enforce and place upon RComm the Judgment.  Such expenditures include, but are not limited to: (a) costs incurred in defending the RPost Companies and certain officers and directors in the Barton Judgment and related cases; (b) costs incurred from paying any potential settlement in the Barton Judgment or related cases ; (c) costs incurred from internal investigations into the accounting impact caused by the numerous improprieties; and (d) costs incurred as a result of the pending

Appell Shapiro, LLP
Attorneys at Law

restatement of the Companies' financial statements and (e) disclosures to shareholders and the public.

71.     Furthermore, the director Defendants have continually hired, or allowed, conflicted counsel to represent the RPost Companies' legal interests while defending claims brought by Barton, and by the shareholder derivative claimants bring claims on behalf of the RPost Companies, when said RPost Companies' defense counsel have concurrently represented the adverse interests of KHAN, TOMKOW and their entity RMAIL LIMITED ("RMail"). Worse yet, the director Defendants have also allowed the RPost Companies to pay for KHAN's and TOMKOW's bankruptcy representation in the main bankruptcy and adversary proceedings, as well as the representation of RMail in the Barton post-judgment related claims, and in the shareholder derivative actions against RMail, while failing to require a bond from those persons for the litigation costs and legal award.

### F.  LACK OF SHAREHOLDER MEETINGS FOR RPOST AND RCOMM, DESPITE REPEATED REQUESTS, AND LACK OF AUDITED FINANCIALS.

72.     For at least the last three years, RComm has failed to hold a noticed annual shareholder meeting, and no directors have been duly elected by a shareholder body. Moreover, for at least the last three years, no audited financials have been provided to the shareholders.  Instead, the director Defendants of RComm have continued to allow KHAN to hold informal telephone conference "shareholder briefings" where none of the shareholders are allowed to hear each other speak, and wherein shareholder matters legally required, commonly held, and expected in corporate governance with respect to annual shareholder meetings, **never** occur.  Thus, the director Defendants have allowed themselves to continue

Appell Shapiro, LLP
Attorneys at Law

Appell Shapiro, LLP
Attorneys at Law

as directors for years, despite the fact elections of directors has not occurred in more than three years.  Thus, the director Defendants have breached their duties to the RPost Companies, to benefit from financial gain represented by payment of remuneration to the direct Defendants they would not otherwise receive if they were replaced.

73.     As to RPost, in September 2013, RPost finally held noticed shareholder meeting (which was never completed after it was continued).  In that RPost meeting, Plaintiff Martin demanded that audited financials be obtained for the period 2010 through 2013, and asked how long it would take to get an audited record.  Khan indicated that he had no idea, that it would be costly, and that he had to find an auditor.  Khan then indicated that he was continuing the meeting to another date, but did not specify a date. Despite the proper requests made at that annual meeting, Plaintiff Martin never received any of the requested financials, nor any notice about a continued meeting, the hiring of any auditors, or any other information from Khan.  To date, no audited financials have been sent to the RPost shareholders for the years 2010 through the present, and no other shareholder meeting has been noticed, resumed or held since September 2013.

74.     As a result of their continued breaches of their fiduciary duties, and the director Defendants' failure to act in the best interest of the RPost Companies, Plaintiffs seek the Court's intervention in requiring the removal of the director Defendants from the Boards of the RPost Companies, and in having the Court require proper noticed meetings, noticed to all shareholder, whereby new independent directors can be appointed for RPost and RComm by way of a shareholder vote.

### G. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS, AND LACK OF BUSINESS JUDGMENT RULE PROTECTION, AS ENTIRE FAIRNESS JUDICIAL SCRUTINY APPLIES.

75.     Plaintiffs are informed and believe, and thereon allege, that the FINANCING MEMORANDUM, which includes the material misrepresentations and non-disclosures of material fact, were approved and ratified by the Defendants, and each of them.  Moreover, despite the clear misrepresentations therein, and non-disclosures, none of the director Defendants has sought to take corrective measure to disclose the true facts to current shareholders nor prospective investors.  Accordingly, the director Defendants have securities fraud liability, and breach of fiduciary duty liability.  Thus, the director Defendants are conflicted from any consideration of a board demand letter which thereby also renders futile any demand to the board of directors.

76.     Furthermore, despite the existence of the Barton Judgment, which has since been confirmed on appeal and which is completely final (California Supreme Court review was denied) and despite findings of corporate fraud against KHAN and Tomkow concerning their action with respect to an RPost shareholder, the director Defendants have failed and refused to remove KHAN and TOMKOW from their positions as officers of RPost and RComm.

77.     Moreover, the FINANCING MEMORANDUM fails to adequately disclose facts concerning the Barton Judgment, and also fails to disclose any of the findings concerning the corporate fraud perpetrated by KHAN and TOMKOW.

78.     Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, still have control of the 15 MILLION SHARES, but have failed and refused to

Appell Shapiro, LLP
Attorneys at Law

take any action to return those shares to RComm.

79.     Yet, less valuable RComm preferred shares (because they would not control the Companies as compared to the controlling interest represented by 15,000,000 common shares) were being sold for more than $4.00 per share at the time of the transfer to ALEXANDERS MANAGEMENT, and as of the date of purported issuance of the FINANCING MEMORANDUM, according to itself issued July 2014, less valuable preferred shares were being sold for $6.90 per share.  Thus, at a minimum, the value of the 15 MILLION SHARES was $60,000,000 and, at $6.90 per share, was $103,500,000.

80.     Plaintiff is informed and believes, and thereon alleges, that well after the FINANCING MEMORANDUM was circulated, and well after the Barton Judgment was obtained, KHAN acting as the "Promoter", Chief Executive Officer, and Director of RComm filed a "FORM D" with the United States Securities Commission ("SEC"), a true and correct copy of which is attached hereto as Exhibit H (hereinafter the "FORM D 2014"). The FORM D 2014 amended the previous FORM D filed in 2013, a true and correct copy of which is attached hereto as Exhibit G (hereinafter "FORM D 2013)". That form also was signed by KHAN as the Promoter, CEO and Director.

81.     The FORM D 2013 was the "new" notice, informing the public that RComm was seeking $18,000,000 in equity investments, meaning shares, and that it had already obtained $187,000 with 2 new sales and investors, with a minimum required investment of $31,250.  See Exhibit G, pp. 1, 4, 5 and 6.

82.     The FORM D 2014 was the "amended" notice, informing the public that RComm was still seeking $18,000,000 in equity investments, meaning shares, but that it had

Appell Shapiro, LLP
Attorneys at Law

already obtained $3,157,811 with 44 new sales, with a minimum required investment of $34,250.  See Exhibit H, pp. 1, 4, 5 and 6.

83.    Thus, according to the Defendants' filings with the SEC, more than $3,100,000 has been received from the public **AFTER** the Barton Judgment was issued on August 30, 2013, with no disclosure to the shareholders or prospective investors about KHAN's and TOMKOW's adjudged corporate fraud against an investor that caused RPost more than $3,820,000 in adjudged liability (in addition to the $3,820,000, Khan also was found liable for $250,000 in punitive damages.  TOMKOW's punitive damage liability was an additional $150,000).  On December 9, 2014, the Court of Appeal of California, in case number B251722, affirmed the Barton Judgment, although the Appellate Court reduced the Judgment against RPost, KHAN and TOMKOW to $3,720,000, while leaving the punitive damage amounts as awarded.

84.    The director Defendants owe duties which they failed to observe, and continue to fail to observe and act upon, all of which render them liable to the RPost Companies and to actual and prospective shareholders. Defendants' self-dealing, and personal exposure, subject the transactions and circumstances to a "fairness" review, which is a higher threshold.  Moreover, in any event, Plaintiffs' showing of breaches of fiduciary duties by the director Defendants overcome the business judgment rule presumption, if and to the extent it were to be applied.

85.    The transactions at issue involve an entire fairness review, and under that standard, it is Defendants' burden to demonstrate that the transactions at issue are entirely fair to the Companies' shareholders.

Appell Shapiro, LLP
Attorneys at Law

86.     The existence of a controlling stockholder with a conflicting interest in a decision will remove the board's decision from the protection of the Business Judgment Rule even where a majority of directors is independent and disinterested, which in any event does not apply in this case because the director Defendants are not disinterested.

87.     The director Defendants have been directors of RComm during the time that the FINANCING MEMORANDUM was circulated to investors and prospective investors (indeed, the director Defendants' names are on page 59 of the FINANCING MEMORANDUM), with materially false information and glaring material omissions.

88.     Once a board broaches a topic in its disclosures, it must provide shareholders materially complete information. Yet, the director Defendants have failed and refused to provide shareholders materially complete information, rendering them liable and not disinterested in the determinations concerning proceeding with legal action.

89.     The director Defendants have also acted disloyally, and thereby breached their duty to the RPost Companies, by consciously disregarding their duty to prevent corporate wrongdoing, such as the publication of misleading statements in the FINANCING MEMORANDUM.

90.     Where, as here, directors knowingly or recklessly make, approve, or fail to correct materially false or misleading statements to shareholders, the directors face liability for breach of fiduciary duty.  Directors breach their duty of loyalty when they disseminate information to shareholders through public statements that they know are deceptive or incomplete.

Appell Shapiro, LLP
Attorneys at Law

91.     The above-mentioned matters have previously been brought to the director Defendants' attention by way of Barton's post-judgment litigation efforts and the shareholder derivative Plaintiffs efforts in adversary proceedings filed against KHAN and TOMKOW, and related non-core claims, but the director Defendants have continued to fail and refuse to make corrective measures, or to replace KHAN and TOMKOW as officers and directors of RPost or RComm.

92.     Consequently, the director Defendants are not a disinterested or independent Board members, and instead are subject to breach of fiduciary claims.  Defendant directors who face a substantial likelihood of personal liability are deemed interested in the transaction and thus cannot make an impartial decision.

93.     Moreover, the director Defendants would also be subject to, and liable, under California Corporations Code Sections 25401 (statute prohibiting sales of securities with false statements or omissions), 25501 (damages), and 25504 (officer, director, and supervisor liability), including in connection with the materially false and misleading FINANCING MEMORANDUM.

94.     Furthermore, the director Defendants' failure to investigate the nature of the secret option plan directed by KHAN, and to act upon the same now that it has been discovered since the WATLINGTON January 28, 2015 deposition, and the continued misrepresentations to actual and prospective shareholders concerning the issued RComm 15,000,000 common shares, while the director Defendants are on the watch, constitutes a breach of their fiduciary duties owed to RComm.

Appell Shapiro, LLP
Attorneys at Law

95.     The Individual Defendants knew of the unlawful practices taking place at the Companies.  Nevertheless, they chose to continue the practices despite the risk of loss to the Companies arising from such unlawful practices.

96.     Plaintiffs have not made a demand on the present Board to institute this action because such a demand would have been a futile, wasteful and useless act.

97.     The director Defendants' challenged misconduct at the heart of this case constitutes the direct facilitation of violations of state and federal law, including knowingly and consciously presiding over the Companies' systematic violations and actively concealing this misconduct via materially misleading Statements. As the ultimate decision-making body of the Companies, the Board affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread violations of applicable law. Breaking the law is not a legally protected business decision, and such conduct can in no way be considered a valid exercise of business judgment. Accordingly, demand on the Board was and is excused.

98.     This action does not arise from a single incident, but numerous violations which involved tens of millions of dollars and were common knowledge throughout the Board and management of the Companies.  Serious violations of applicable law occurred systematically as a direct result of the Board's decision to embrace or consciously disregard a policy of calculated legal violations.  There is no legitimate "business judgment" involved in devising or carrying out such unlawful policies and tactics. Accordingly, demand on the Board is excused.

99.     Defendants breached their duty of loyalty by failing to implement adequate internal controls and procedures to ensure the accuracy of the Companies' disclosures.

Appell Shapiro, LLP
Attorneys at Law

Defendants also failed to prevent the other Defendants from committing this wrongdoing.

100.    The RPost Companies has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for the RPost Companies any part of the damages the RPost Companies suffered and will suffer thereby.

101.    Each of the Director Defendants was a member of RPost Companies' Board during some or all of the misconduct alleged herein. Each of the Director Defendants was aware of, participated in and approved the wrongs alleged herein. Thus, they have knowingly chosen not to exercise the fiduciary duties of loyalty, good faith, independence and candor owed to the Companies, and not to protect RPost Companies or rectify the illegal practices complained of herein.

102.    Each of the director Defendants has therefore approved of and continues to participate in a course of corporate misconduct that includes approving and/or condoning the illegal conduct and practices described herein. Each of the director Defendants had the ability and/or opportunity to prevent these practices. As members of the Board, the director Defendants are responsible for overseeing the Companies' compliance with legal requirements. Therefore, all of the director Defendants are liable for not ensuring that the officers and employees of the Companies did not expose the Companies to unnecessary risk. Because the director Defendants are liable for approving and directing the illegal conduct described herein, demand would be futile.

Appell Shapiro, LLP
Attorneys at Law

103.   All of the director Defendants, including each member of the Board, face a substantial likelihood of liability arising from their violation of federal and state securities laws in connection with their issuance of the Statements. The Statements constituted solicitations by the director Defendants, as applicable, for which they may be held personally liable under the federal and state securities laws. As set forth herein, the Statements were materially inaccurate and incomplete, which have caused significant harm to the RPost Companies. As a result, the Director Defendants bear a substantial likelihood of liability for violations of federal and state securities laws, are hopelessly conflicted and not disinterested with respect to such claims and are fundamentally disabled from impartially considering a demand to impose liability on themselves for violating their own statutory disclosure obligations.

104.   The director Defendants are likewise conflicted and unable to pursue the Companies' claims against the officers and directors. Any effort to directly prosecute such claims against those persons for their direct role in the violations of applicable law carried out in RPost Companies' name would necessarily expose the Board's own culpability for the very same conduct.

105.   Moreover, the acts complained of constitute violations of the fiduciary duties owed by RPost Companies' officers and directors, and these acts are incapable of lawful ratification. Despite having knowledge of the claims and causes of action raised by Plaintiffs, the current Boards have failed and refused to seek to recover on behalf of RPost Companies for any of the wrongdoing alleged by Plaintiffs herein.

Appell Shapiro, LLP
Attorneys at Law

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

IV.   **COUNTS**

## COUNT I

**Against All Defendants For Violation of Section 29(b) of the Exchange Act**

106.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

107.   The WATLINGTON TRANSACTION identified herein, and any stock issuances thereby, were entered in violation of the Exchange Act and rules prescribed thereunder, including Rule 10b-5. There is contractual privity between the RPost Companies and the recipients of the WATLINGTON TRANSACTION shares. RPost Companies and the RPost Companies' investors are in the class of persons the Exchange Act was designed to protect.

108.   Accordingly, the WATLINGTON TRANSACTION, and the remaining stock units issued pursuant to the secret employee option plan, must be deemed void.

## COUNT II

**Against the Individual Defendants For Breach of Fiduciary Duty and/or**

**Aiding and Abetting Breach of Fiduciary Duty**

109.   Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

110.   The wrongful conduct alleged herein was continuous, connected and ongoing throughout the relevant time period. The wrongful conduct resulted in continuous, connected and ongoing harm to the Companies.

Appell Shapiro, LLP
Attorneys at Law

111.   As alleged in detail herein, the Individual Defendants, by reason of their positions as officers and directors of RPost Companies and because of their ability to control the business and corporate affairs of RPost Companies, owed RPost Companies fiduciary obligations of good faith, loyalty and care, and were and are required to use their utmost ability to control and manage RPost Companies in a fair, just, honest and equitable manner.

112.   The Individual Defendants violated their fiduciary duties of loyalty and good faith by failing in their enumerated duties, which caused the violations of federal and state laws, and the failures to use KHAN's and TOMKOW's shares to cover the liability Khan and Tomkow caused for the RPost Companies.

113.   The Individual Defendants further violated their fiduciary duty of loyalty by permitting a Company-wide business strategy which involved various violations of state and federal law.

114.   As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the RPost Companies has suffered significant damages as alleged herein.

115.   Plaintiffs, on behalf of RPost Companies, have no adequate remedy at law.

## COUNT III

### Against All Defendants For Waste of Corporate Assets

116.   Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

/////

/////

Appell Shapiro, LLP
Attorneys at Law

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT,
BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

117.    The wrongful conduct alleged herein was continuous, connected and ongoing throughout the relevant time period. The wrongful conduct resulted in continuous, connected and ongoing harm to the RPost Companies.

118.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by:

      a.  failing to maintain sufficient internal controls over the RPost Companies' assets;

      b.  failing to seek to invalidate purported share restrictions represented by "management agreements" signed by KHAN and TOMKOW for each other, and which were permeated with self-dealing;

      c.  failing to properly consider the interests of the RPost Companies and their shareholders;

      d.  failing to conduct proper supervision;

      e.  paying unlawful and undeserved incentive compensation to certain of its executive officers;

      f.  continually allowing conflicted counsel to represent the RPost Companies' legal interests, while having a direct conflict with KHAN, TOMKOW and their entity RMAIL;

      g.  continually allowing the RPost Companies to pay for the defense of KHAN, TOMKOW and their entity RMAIL concerning the Barton Judgment, Barton's post-judgment related claims, and the shareholder derivative claims filed against KHAN, TOMKOW and RMAIL, all without

Appell Shapiro, LLP
Attorneys at Law

requiring posting of bonds by KHAN, TOMKOW and RMAIL; and

h.  incurring millions of dollars of legal liability and/or legal costs to defend the unlawful actions referred to hereinabove.

119.   As a result of the waste of corporate assets, the Individual Defendants are liable to the RPost Companies.

120.   Plaintiffs, on behalf of RPost Companies, have no adequate remedy at law.

## COUNT IV

### Against All Defendants For Unjust Enrichment

121.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

122.   The wrongful conduct alleged herein was continuous, connected and ongoing throughout the applicable time period. The wrongful conduct resulted in continuous, connected and ongoing harm to the Companies.

123.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of RPost Companies. The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to RPost Companies.

124.   Plaintiffs, as shareholders and representatives of RPost Companies, seek restitution from these Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

125.   Plaintiffs, on behalf of RPost Companies, have no adequate remedy at law.

Appell Shapiro, LLP
Attorneys at Law

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT,
BREACH OF FIDUCIARY DUTY , WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT

**COUNT V**

**Against All Defendants For Breach of Fiduciary Duty in Violation of California**

**Corporations Code Section 309**

126.    The Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

127.    The wrongful conduct alleged herein was continuous, connected and ongoing throughout the relevant time period. The wrongful conduct resulted in continuous, connected and ongoing harm to the Companies.

128.    As alleged in detail herein, Defendants, by reason of their positions as officers and directors of RPost Companies and because of their ability to control the business and corporate affairs of RPost Companies, owed RPost Companies fiduciary obligations of good faith and loyalty and were and are required to use their utmost ability to control and manage RPost Companies in a fair, just, honest and equitable manner.

129.    Defendants violated their fiduciary duties of loyalty and good faith by failing in their enumerated duties, which caused the violations of federal law.

130.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary duty, the Companies has suffered significant damages, as alleged herein.

131.    Plaintiffs, on behalf of RPost Companies, have no adequate remedy at law.

**V.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment as follows:

A.    Against all Defendants and in favor of the RPost Companies for the amount of damages sustained by the RPost Companies as a result of the Individual Defendants'

Appell Shapiro, LLP
Attorneys at Law

breaches of fiduciary duties and waste of corporate assets, in an amount according to proof in excess of $150,000;

   B.  Directing RPost Companies to take all necessary actions to reform and improve their corporate governance and internal procedures to comply with applicable laws and to protect RPost Companies and their shareholders from repeating the damaging events described herein, including, but not limited to, putting forward with noticed annual shareholder votes, and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

   1.  A proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

   2.  A provision to permit the shareholders of RPost Companies to nominate at least three candidates for election to the Board;

   3.  A proposal to ensure the accuracy of the qualifications of RPost Companies' directors, executives and other employees;

   4.  A proposal to strengthen RPost Companies' internal controls over solicitations to prospective shareholders;

   5.  A proposal to strengthen the RPost Companies' accounting controls; and

   6.  A proposal to strengthen the RPost Companies' disclosure controls.

   C.  An order invalidating the election of directors to the Board approved based on the misleading Statements, and appointed without noticed shareholder meetings;

Appell Shapiro, LLP
Attorneys at Law

D.     An order invalidating the WATLINTON TRANSACTION, as it was based upon materially misleading statements and non-disclosures of material fact, and as it constituted a fraudulent transfer made for no consideration or inadequate consideration which did not represent market value;

E.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the Individual Defendants' assets so as to assure that Plaintiffs on behalf of RPost Companies have an effective remedy;

F.     Awarding to RPost Companies restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants, including without limitation on the unjust enrichment claims;

G.     Awarding to Plaintiffs reasonable attorneys' fees, consultant fees, expert fees, costs and expenses; and

H.     Granting such other and further relief as the Court deems just and fair, Plaintiffs, on behalf of the RPost Companies, demand judgment.

## VI.   JURY DEMAND

Plaintiffs demand a trial by jury.


January 26, 2016                                    APPELL SHAPIRO, LLP


                                                        /s/ Scott E. Shapiro
                                            By:_____
                                                   SCOTT E. SHAPIRO
                                                   Attorneys for Plaintiffs

Appell Shapiro, LLP
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, THOMAS BURKE, hereby certify that:

I have read the foregoing VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT and know its contents.

I am a party to this action.  The matters stated in the forgoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the forgoing is true and correct.  Executed this 26th day of January, 2016.

_Thomas K Burke_

THOMAS BURKE

Appell Shapiro, LLP
Attorneys at Law

**VERIFICATION TO THIRD AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, GEORGE MARTIN, hereby certify that:

I have read the foregoing VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECTION 29 (B) OF THE EXCHANGE ACT, BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT and know its contents.

I am a party to this action.  The matters stated in the forgoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California, and the United States of America, that the forgoing is true and correct.  Executed this 26th day of January, 2016.

*George Martin*

GEORGE MARTIN

Appell Shapiro, LLP
Attorneys at Law

**VERIFICATION TO THIRD AMENDED COMPLAINT**

# EXHIBIT A



1   SUPERIOR COURT OF THE STATE OF CALIFORNIA

2         FOR THE COUNTY OF LOS ANGELES

3   DEPARTMENT SW B      HON. STUART M. RICE, JUDGE

4   KENNETH BARTON,                    )
                                       )
5                                      )
                    PLAINTIFF(S),      )
6                                      )
              V.                       )   NO. YC061581
7                                      )
    R. POST INTERNATIONAL LIMITED,     )
8   ET AL.,                            )
                                       )
9                   DEFENDANT(S).      )
10  _____)

11          REPORTER'S TRANSCRIPT OF PROCEEDINGS
12                    MARCH 9, 2012

13

14
    APPEARANCES:
15  FOR PLAINTIFF:        MCGARRIGLE, KENNEY & ZAMPIELLO
                          BY:  PATRICK C. MCGARRIGLE, ESQ.
16                        9600 TOPANGA CANYON BOULEVARD
                          SUITE 200
17                        CHATSWORTH, CALIFORNIA 91311

18  FOR DEFENDANT:        BEN-ZVI & ASSOCIATES
                          BY: HENRY BEN-ZVI, ESQ.
19                        3231 OCEAN PARK BOULEVARD
                          SUITE 212
20                        SANTA MONICA, CALIFORNIA 90405

21

22

23

24

25                          COPY

26

27
                    KAREN B. YODER, CSR NO. 8123
28                  OFFICIAL REPORTER

49

1    CORRECT COPY OF THE RESOLUTIONS.

2         A     I BELIEVE THE DOCUMENTS WERE PROVIDED TO

3    YOU AS PART OF DISCOVERY.  I DON'T KNOW WHAT THE

4    SPECIFIC PROCEDURES ARE TO AMEND DOCUMENTS LIKE THIS AT

5    THE BOARD'S DISCRETION.  CORPORATION SECRETARY.  THE

6    CORPORATE SECRETARY WENT THROUGH THE PROCESS THAT HE

7    DEEMED TO BE APPROPRIATE.

8         Q     MR. KHAN --

9         THE COURT:  HOLD ON A SECOND.  I'M NOT SHOWING

10   358.

11        MR. MCGARRIGLE:  I THOUGHT I HAD THAT FOR

12   MR. BEN-ZVI FROM YESTERDAY.  BUT I'LL MOVE TO IDENTIFY

13   IT.

14        THE COURT:  I SEE 359, 360, 357; SO I THINK WE

15   WENT ALL AROUND IT.

16        MR. BEN-ZVI:  EARLIER THIS MORNING, I BELIEVE.

17   THAT'S WHAT MY LITTLE POST-IT NOTE SAYS.

18        THE COURT:  AGAIN, TRICKING ME.  PLAINTIFF.  I

19   ALWAYS LOOK IN THE COLUMN OF THE PARTY WHOSE DOCUMENT IT

20   WAS.  IT WAS IDENTIFIED BY THE PLAINTIFF EARLIER AS

21   DEFENDANT'S 358.

22        MR. MCGARRIGLE:  THANK YOU, YOUR HONOR.  I

23   APOLOGIZE FOR THE CONFUSION.

24        THE COURT:  I REMEMBER THE QUESTIONS ABOUT IT.

25   THAT'S WHY I WAS BAFFLED.  I NEED TO JUMP IN FOR A

26   MOMENT.  I THINK THERE'S A DIFFERENCE BETWEEN A DOCUMENT

27   IN WHICH SOMEBODY SIGNED IT ON BEHALF OF MR. BARTON OR

28   WHETHER THIS IS A DOCUMENT THAT HAD BEEN SIGNED BY

50

```
 1    MR. BARTON, BUT THE LANGUAGE WAS CHANGED WITHOUT TALKING
 2    TO HIM.  WHICH IS IT?  YOU KNOW WHAT I MEAN?
 3             THE WITNESS:  YES.
 4             THE COURT:  WHICH IS IT?
 5             THE WITNESS:  SO THIS DOCUMENT HERE IS THE
 6    DOCUMENT THAT WAS AMENDED, AND SO IT WAS AMENDED WITHOUT
 7    HIM SIGNING THE AMENDMENT.
 8             THE COURT:  SO HE HAD SIGNED IT PRIOR TO THE
 9    AMENDMENT.
10             THE WITNESS:  CORRECT.
11             THE COURT:  AND THEN THE SIGNATURE PAGE WAS
12    MERELY ATTACHED TO THE AMENDED DOCUMENT WITHOUT
13    DISCUSSING IT WITH HIM.
14             THE WITNESS:  CORRECT.
15             THE COURT:  THAT'S WHAT I THOUGHT.  GREAT.
16             MR. MCGARRIGLE:  SINCE WE'RE TALKING ABOUT WHAT
17    HE SIGNED, HE SIGNED EXHIBIT 80.
18             THE COURT:  RIGHT.
19             MR. MCGARRIGLE:  BUT HE DIDN'T SIGN 358.
20             THE WITNESS:  CORRECT.
21        Q     BY MR. MCGARRIGLE:  AND WHAT'S CRITICALLY
22    DIFFERENT, MR. KHAN, IF YOU WOULD ASSIST ME, IS THAT
23    WHAT R. POST BOARD DID WAS REMOVE THE PORTION OF 80 THAT
24    DESCRIBED THE ISSUANCE OF STOCK AND SUPPLANTED THAT WITH
25    AN ENTIRE NEW PARAGRAPH CALLED, "ALLOTMENT OF SHARES,"
26    WHICH IMPOSED CONDITIONS UPON THE ALLOTMENT OF THOSE
27    SHARES; CORRECT?
28             MR. BEN-ZVI:  OBJECTION; THE DOCUMENT SPEAKS FOR
```

51

```
1   ITSELF.
2          THE COURT:  OVERRULED.
3          THE WITNESS:  THE PARAGRAPH 4 IS, I BELIEVE, ONE
4   OF THE PARAGRAPHS THAT WAS CITED IN THE MINUTES OF APRIL
5   2006 OR SO WITH AMENDED LANGUAGE.
6          Q     BY MR. MCGARRIGLE:  ALL RIGHT.  PARAGRAPH
7   4 IN EXHIBIT 358, THE DIFFERENT VERSION OF THE MAY 30TH
8   MINUTES, THE LANGUAGE INSERTED ATTEMPTED TO CREATE OR
9   IMPOSE A CONDITION UPON THE ALLOTMENT OF SHARES TO
10  MR. BARTON; CORRECT?
11         A     NO.
12         Q     WELL, MR. KHAN, ON YOUR EXHIBIT 358, IT
13  SAYS IN THE MIDDLE PARAGRAPH, QUOTE, THE SHARES SO
14  ALLOTTED WILL HAVE BEEN SUBSCRIBED FOR AND AGREED TO BE
15  PAID UPON TERMS OF PAYMENT AS DESCRIBED IN THE AMENDED
16  AND RESTATED STOCK OPTION GRANT, ET CETERA, ET CETERA.
17  THAT REQUIREMENT WAS NOT A PART OF EXHIBIT 80'S ORIGINAL
18  VERSION OF THE RESOLUTIONS; AGREED?
19         A     IF IT'S NOT IN THE ORIGINAL EXHIBIT 80,
20  THEN IT WASN'T THERE.
21         Q     SO IF IT WASN'T THERE, THEN AT NO TIME,
22  DID MR. BARTON AGREE THAT HIS 500,000 SHARES WERE
23  CONDITIONED UPON HIM EXECUTING SOME AGREEMENT; CORRECT?
24         A     HE AGREED TO WHAT IS IN YOUR EXHIBIT 80.
25         Q     RIGHT.  HE DID NOT AGREE TO WHAT'S IN 358.
26         A     CORRECT.
27         Q     SO IF HE DIDN'T AGREE TO THE CONDITIONING
28  OF THE ISSUANCE OF HIS HALF-A-MILLION SHARES ON SIGNING
```

**EXHIBIT B**

RECEIVED
AUG 0 8 2012

CONFORMED COPY
ORIGINAL FILED
les Superior Court

AUG 0 3 2012

John A. Clarke, Clerk

By P. Schultz, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| KENNETH BARTON, | ) Case No.: YC061581 |
| Plaintiff, | ) STATEMENT OF DECISION |
| vs. | ) CALIFORNIA RULES OF COURT, ) Rule 3.1590(a) |
| RPOST INTERNATIONAL LIMITED; RPOST, INC., Aka AVION MICROSERVICES; INC.; SYMANTEC CORPORATION; ZAFAR KHAN; TERRANCE TOMKOW; HENRI ISENBERG; CAROLE KRECHMAN; JAMES WATLINGTON; CHARLES BREED; ELLSWORTH ROSTON; and DOES 1 through 50, inclusive., Defendant. | ) TRIAL: March 1 - April 12, 2012 ) SUBMITTED ON JUNE 19, 2012 |

## I. PROCEDURAL HISTORY

This case was filed on January 29, 2010, and after numerous motions and pre-trial proceedings, trial commenced on March 1, 2012. Both sides waived their right to a jury trial and the case was tried to the court between the dates of March 1, 2012 and April 12, 2012. After a closing argument briefing schedule, the matter was formally submitted on June 19, 2012.

- 1 -

Main Document   Page 18 of 28

1    The same parties were involved in prior litigation in case number YC051312

2    (consolidated with YC051416 and YC053346) which settled during the trial. In addition, the

3    same parties have a new case pending in this court under case number YC065259, which was

4    ordered related to this case pursuant to CRC Rule 3.300 on September 27, 2011.

5

6    **II. STATEMENT OF THE CASE**

7

8        At the height of the dot-com boom in the late 90s, defendant Dr. Terrance Tomkow,

9    conceived a concept and developed a software product that was akin to certified mail for the

10   burgeoning e-mail industry. Other entrepreneurs in the technology sector were excited about the

11   idea and it appeared that the company would either be taken public or acquired by a larger

12   company at great profit. In order to facilitate such an event, a corporate structure was created by

13   Dr. Tomkow and plaintiff Kenneth Barton soon joined him in his efforts followed by defendant

14   Zafar Khan. The three individuals are known as the founders of RPost, Inc. and RPost

15   International Limited (hereinafter referred to as RPost)(See Exhibit 1).

16       Unfortunately, the dot-com bust soon followed, resulting in a lost opportunity at least in

17   the short-term. The three founders of RPost were left with Dr. Tomkow's brainchild, limited

18   capital and no apparent market. Now, these many years later, the RPost technology continues to

19   be developed and the elusive pay-off appears no closer to fruition. What RPost does have is a

20   history of several years of time-consuming, expensive and ongoing litigation as well as a series

21   of private placement fundraising memoranda drafted by defendant Khan. These private

22   placement memos have enabled RPost to continue to raise funds from investors who become

23   preferred shareholders with the hope that RPost will become the next Facebook or Instagram.

24       While the current RPost principals continue to engage in aggressive fundraising, extolling

25   the anticipated future successes of RPost, they have nonetheless adopted the position in this trial

26   that the common shares of stock in RPost have no value. On the other hand, plaintiff seeks

27   damages in excess of $14 million claiming that his common shares of stock in RPost, which he

28   alleges have been unlawfully converted by defendants, have a substantial value. This conclusion

- 2

1  is based largely on what has been characterized as RPost's successful fundraising efforts with

2  increasing prices charged for each new series of preferred shares offered to investors.

3

4  **III. DEFENDANTS, RPOST INTERNATIONAL LIMITED, TERRANCE TOMKOW**

5  **AND ZAFAR KHAN UNLAWFULLY CONVERTED PLAINTIFF'S SHARES OF**

6  **STOCK.**

7

8  **A. Plaintiff's Claim Was Filed Within the Applicable Statute Of Limitations For**

9  **Conversion.**

10

11      The statute of limitations for a conversion cause of action is three years as set forth in

12  Code of Civil Procedure Section 338. According to plaintiff Barton, the date of conversion of his

13  shares of RPost common stock is either June 30, 2009 or July 7, 2009. (See Exhibit 66B , Kabani

14  554). Although it is true that plaintiff inquired as to the ownership of his shares of stock as far

15  back as 2007 (see exhibits 85 and 86), Barton's shares of stock were not transferred back to the

16  RPost treasury until either June or July of 2009. Mere suspicion of possible wrongdoing does not

17  commence the running of the statute of limitations nor does defendants' belated claim that

18  plaintiff was never a shareholder of RPost. *See Bennett v. The Hibernia Bank* (1956) 47 Cal.2d.

19  540, 561; *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805; *Kee v. Becker* (1942) 54

20  Cal.App.2d 466.

21      The court is cognizant of attorney Robyn Crowther's letter to plaintiff's counsel dated

22  January 30, 2007 and seen by plaintiff on February 7, 2007 which represents that plaintiff owns

23  no shares of RPost (Exh. 308). As this lawsuit was filed on January 29, 2010, this case has been

24  filed in a timely manner under either scenario.

25      Similarly, the court rejects defendants' argument that the plaintiff has split a cause of

26  action as an earlier lawsuit between the parties involved a claim for the delivery of the stock

27  certificates themselves which is a far different issue than that set forth in this litigation.

28

- 3

## B. The Court Rejects the Assertion By Defendants That Plaintiff's Ownership Of Shares In RPost International Related To Whether He Held a JD Degree.

It is the court's conclusion that defendants RPost, Khan and Tomkow raise the issue of when Barton received his JD degree and where he received it from as a pretext for depriving plaintiff of his shares of RPost International. There are no documents to support the conclusion that Barton's JD degree was consideration for the issuance of said stock to him. He never acted as General Counsel for RPost nor did he prepare corporate resolutions or documents. In fact, there are many documents which directly contradict the testimony of Khan and Tomkow. (See Barton's nondisclosure agreements Exhibits 69 and 70; employment agreement Exhibit 71; RPost corporate resolutions Exhibits 78, 80 and 81; RPost corporate tax records Exhibit 65) all of which support the conclusion that Barton's JD degree was of no consequence in the issuance of RPost stock to him. Also, a JD degree without a license to practice law is of limited utility. His degree, actually received on March 3, 2001 (Exh. 92), at best, may have been helpful in marketing the company and was included in numerous private placement memoranda drafted by defendant Khan (see, for example, Exhibits 18 and 21). The court is not convinced that Barton made any misrepresentations as to his status of holding a JD degree at an earlier date. In any event, Tomkow's decision to include him as a founder with common stock interest in the new company had nothing to do with this status.

Although it appears that Barton never actually wrote a check in consideration for the issuance of stock to him, this likewise does not stand in the way of his claim for the conversion of his shares. None of the founders had paid for their initial stock issuances in this manner and the consideration for their shares was stated to be unreimbursed expenses and compensation. Much later, after plaintiff had ceased his day to day involvement with the company, Khan and Tomkow wrote checks to RPost to document the price paid in cash for their shares, when attempting to finally place the financial record-keeping of RPost in good order.

- 4

## IV. THE EVIDENCE ALSO SUPPORTS THE CONCLUSION THAT PLAINTIFF HAS MET HIS BURDEN OF PROOF ON THE FRAUD, BREACH OF FIDUCIARY DUTY, AND BUSINESS AND PROFESSIONS CODE 17200 CAUSES OF ACTION.

In addition to that set forth above, the defendants also retroactively created and modified corporate resolutions to re-create the history supporting the result that they sought. Particularly egregious is Exhibit 79, prepared as if it had been executed on January 2, 2001 and including the signature of Kenneth Barton. In reality, plaintiff had executed the corporate resolution set forth as Exhibit 78, which included a page 3 confirming the issuance of 3,616,500 shares of RPost stock to him and Khan. It also defies credulity that the best evidence of the issuance of stock in RPost, that being the shareholder registry, has either been misplaced or destroyed casting further doubt on defendants' testimony that Barton's shares had been properly canceled and returned to the treasury in 2006.

## V. PLAINTIFF IS ALSO ENTITLED TO DECLARATORY RELIEF REGARDING HIS OWNERSHIP OF SHARES IN RPOST INTERNATIONAL.

The court issues a declaration that plaintiff Barton was at all relevant times an owner of 6,016,500 common shares of RPost International and that he provided appropriate consideration for said shares of stock based on unreimbursed expenses and salary owed. Barton shall submit a check to the RPost International treasury in an amount equivalent to what Khan paid for the same number of shares so that the financial records of RPost International are properly balanced. The court further declares that defendant, RPost International, is prohibited from taking any action to encumber, forfeit and /or cancel Barton's shares without having obtained prior written approval from either the court, Barton or his duly authorized counsel. In addition, his shares are not subject to any amended bylaws, agreements, or other restrictions to which he has not personally, or through his counsel, provided written consent and approval.

- 5 -

1    Plaintiff has also requested additional relief in connection with this and the Business and
2    Professions Code Section 17200 cause of action including the appointment of a receiver and
3    other conditions, which would impose a substantial and unjustified burden on defendants. The
4    court declines to include such remedies in the relief afforded to plaintiff in this case.
5
6    **VI. IN REVIEWING THE TESTIMONY OF ALL OF THE WITNESSES, THE COURT**
7    **IS DRAWN TO THE INESCAPABLE CONCLUSION THAT PLAINTIFF HAS MET**
8    **HIS BURDEN OF PROOF ON ALL OF THE CAUSES OF ACTION.**
9
10       The court did not find defendant Khan to be a credible witness and concludes that he
11   knew at all relevant times the status of Barton's legal education. Indeed, Khan's genius lies in his
12   ability to draft private placement memoranda designed to entice investors, which requires him to
13   put the best possible light on all aspects of RPost's business. It could be argued that he overstated
14   his own credentials as well as those of Barton in his ambitious attempts to continue to raise
15   money for the benefit of the company. (See, for example, Exhibits 18 and 21). Tomkow was a
16   reluctant participant in the business aspects of operating RPost and knowingly followed the lead
17   of Khan concerning the determinations made regarding plaintiff Barton.
18       General Prior was one of the most impressive individuals this court has had the pleasure
19   of listening to from the witness stand  yet his testimony was of little assistance to the defendants'
20   case. In fact, he seemed to forget that he indeed was a shareholder of RPost International and had
21   to be reminded that he had written a check to confirm the issuance to him of shares in the
22   company. (See Exhibit 366) His recollection that Barton had been introduced to him by another
23   as holding a JD degree is of little consequence.
24       Jerry Silver testified that he recalled an initial meeting with Barton, where there was no
25   mention of him as holding a JD or as being an attorney. He did, however, testify that when
26   approached several years later regarding RPost by Barton and Khan, it was mentioned that
27   Barton was an attorney. Ultimately, whether or not he recalls such a statement, Khan knew that
28   Barton was not an attorney and it is unlikely he was represented to be one.

- 6

1    The testimony of Daniel Akiu was even more troubling and the court questions the

2    wisdom of defendants calling him as a witness. He appeared biased against plaintiff in all aspects

3    of his testimony and he alone testified that plaintiff had advised him that he attended law school

4    at the University of Maryland and that he was corporate counsel for RPost. The court attaches

5    little to no credibility to his testimony.

6

7    **VII. THE PLAINTIFF IS ENTITLED TO DAMAGES FOR THE CONVERSION OF**

8    **THE SHARES OF STOCK BY THE REISSUANCE TO HIM OF SAID SHARES.**

9

10    The court had the opportunity to listen to the testimony of two experts, Mr. D'Almeida

11    for the plaintiff and Mr. Henry for the defendants, as to the valuation of the RPost common

12    stock. Although both men are extremely well qualified, Mr. Henry disputes the validity of the

13    back-solve method utilized by Mr. D'Almeida but provided no reasonable alternative. It is

14    difficult for the court to conclude that the value of the common shares of stock in RPost is zero

15    in light of the 13 years that defendants have committed to the success of the company as well as

16    Khan's ability to raise substantial funds to further RPost's long-term goals.

17    On the other hand, the court is also not persuaded that the utilization of the back-solve

18    method is appropriate to determine the value of the common shares of stock. Although the court

19    recognizes that the experts were retained for a particular purpose, their widely divergent opinions

20    support the conclusion that ownership of shares in RPost remains a very speculative proposition,

21    the value of which is almost impossible to determine. Plaintiff would like the court to be

22    persuaded by other technology start-up success stories such a the recent purchase of Instagram

23    by Facebook for a sum in excess of $1 billion. Defendants, meanwhile, emphasize the fact that

24    no liquidation event, such as an initial public offering or buyout by a larger company, is on the

25    horizon for RPost. The court cannot help but wonder, however, how the preferred shareholders

26    would react had they listened to the testimony of Mr. Henry and defendant Khan in which they

27    attempted to convince this Court that the shares of RPost presently have no value.

28

- 7

1     The court is concerned that if it chooses to assess a monetary value to the shares of stock,

2 future events, which are totally based upon speculation, could result in an inequity for either

3 plaintiff or defendants. Therefore, since the shares of stock still exist and a proper remedy for

4 conversion includes the return of the converted property, that is what the court so rules. *See State*

5 *Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1081.

6     Therefore, the defendants are ordered to restore to plaintiff 6,016,500 shares of RPost

7 International common stock. If the defendants have made further transfers of their own stock to

8 other entities since the resignation of Barton from RPost International, the same process must

9 take place for his shares so that they retain the same benefit and potential value as the 6,016,500

10 shares previously owned by Khan.

11     The court is aware that Khan wrote checks to RPost International Limited in the amounts

12 of $5,000.00 (Exh. 319), $3600 (Exh. 346) and $1900 (Exh. 341) for a total of $10,500.00 in

13 additional consideration for his shares of common stock. Plaintiff should likewise pay to the

14 RPost treasury the sum of $10,500.00 or accept an offset of his monetary damages award in said

15 amount to confirm his ownership of 6,016,500 shares of RPost International or its successor

16 entity or entities. (See defendants Exhibits 319, 340, 341, 342, 345, and 346).

17     The court is satisfied that both Barton and Khan had provided consideration for the

18 issuance of the 6,016,500 shares of common stock by way of unreimbursed expenses and salary.

19 (See e.g., exhibits 1, 2, 3, 5, 9, 58, 81). Nonetheless, in an effort to ensure that the books and

20 records of Rpost would withstand scrutiny, the evidence supports the conclusion that Khan and

21 Tomkow wrote personal checks to RPost as further consideration for their common shares of

22 RPost stock. So too should Barton provide this additional consideration in exchange for clear

23 title to his 6,016,500 shares.

24     Barton will have no role in the management of the company but must be given reasonable

25 notice of meetings of its shareholders and major transactions. Certainly, the parties are

26 encouraged to meet and confer to determine, on their own, a purchase price for Barton's shares of

27 stock so that a potentially uncomfortable relationship going forward can be avoided.

28

- 8

## VIII. ADDITIONAL DAMAGES ARE POTENTIALLY RECOVERABLE BY PLAINTIFF ON A CONVERSION CLAIM.

In a conversion cause of action, the plaintiff is also entitled to recover reasonable compensation for time and money spent by him in attempting to recover the converted property. Cal. Civil Code Section 3336. Additionally, plaintiff is entitled to emotional distress damages suffered as a result of defendant's conduct. *See Gonzales v. Personal Storage, Inc.* (1997) 56 Cal.App.4th 464, 475. Reasonable compensation for time and money spent does not include attorney's fees and plaintiff has not proffered evidence to support an award for this category and no award is therefore made. *See Russell v. United Pac. Ins. Co.* (1963) 214 Cal.App.2d 78, 93.

On the issue of general damages for emotional distress, plaintiff has requested an award of $500,000.00 in his Post-Trial Closing Brief. It is obvious that he has suffered emotional distress, as he was involved with RPost from the beginning and was fully expecting to maintain his ownership share as they sought their financial reward. Rather, after returning to the company after his convalescence from a stroke, everything went downhill culminating in the other founding shareholders conspiring to deprive him of his common shares of stock. The Court awards the sum of $100,000 as emotional distress damages for plaintiff.

## IX. THE PLAINTIFF HAS NOT MET HIS BURDEN OF PROOF TO IMPOSE LIABILITY AGAINST THE INDIVIDUALS CAROLE KRECHMAN AND ELLSWORTH ROSTON.

Although plaintiff has introduced evidence of these individual defendants' involvement as board members of RPost International, the court concludes that the plaintiff has not met his burden of proof as is required to impose liability on these individuals for participating in a conspiracy to convert his common shares of stock.

- 9

## X. THE PLAINTIFF HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT THE ACTIONS OF RPOST INTERNATIONAL LIMITED, TOMKOW AND KHAN WERE DONE WITH MALICE, OPPRESSION AND FRAUD, GIVING RISE TO A CLAIM FOR PUNITIVE DAMAGES.

It is the court's conclusion that ultimately Tomkow and Khan determined that Barton was making little or no contributions to the success of RPost International. Tomkow provided the idea and technical savvy and Khan proved to be a skilled fundraiser to keep the company afloat. What was Barton's role they wondered, and if indeed he was not even providing legal counsel, why should he continue as a shareholder of RPost International? The defendants may very well have a legitimate point as to plaintiff's actual contributions to RPost but he nonetheless was at all times a holder of 6,016,500 properly issued shares of common stock. The manner by which Khan and Tomkow attempted to separate him from that ownership gives rise to a proper claim for punitive damages.

## XI. CONCLUSION.

Based on the court's ruling, plaintiff is awarded the return of his 6,016,500 shares of common stock of RPost International or its equivalent, general damages in the amount of $100,000, punitive damages in an amount to be determined and his costs of suit as the prevailing party. As referenced above, plaintiff must pay the sum of $10,500.00 as additional consideration for his 6,016,500 shares. At Barton's option, this may be accomplished by writing a check to RPost, or by an offset to the monetary damages awarded herein.

Dated : 8/3/12

Hon. Stuart M. Rice
Judge of the Superior Court

- 10

# EXHIBIT C

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN ~ 4 2013

John A. Clarke, Clerk

By P. Schultz, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| KENNETH BARTON, | Case No. YC061581 <br> [Related to Case No. YC065259] |
| Plaintiff, | |
| v. | [Assigned to Honorable Stuart M. Rice, Department "B"] |
| RPOST INTERNATIONAL LIMITED; RPOST, INC., Aka AVION MICROSERVICES, INC.; SYMANTEC CORPORATION; ZAFAR KHAN; TERRANCE TOMKOW; HENRI ISENBERG; CAROLE KRECHMAN; JAMES WATLINGTON; CHARLES BREED; ELLSWORTH ROSTON; and DOES 1 through 50, inclusive, | **RULING ON PUNITIVE DAMAGES AND REVISIONS TO STATEMENT OF DECISION** |
| Defendants. | |

## I.  PROCEDURAL HISTORY

On August 3, 2012, the court issued its Statement of Decision pursuant to California Rules of Court Rule 3.1590 in Phase 1 of the trial. As the court concluded the plaintiff was entitled to recover punitive damages, the matter was thus calendared for Phase 2 of the trial which took place on November 20, 21, & 26, 2012.

1

1    At the conclusion of the punitive damage portion of the trial, it became obvious to the court that

2  the assets and character of RPost International Limited had changed dramatically, and to simply restore

3  Mr. Barton's shares of stock as provided for in its Statement of Decision would not be consistent with

4  the intent of the court's original ruling. For this reason, returning the 6,016,500 shares to Mr. Barton

5  would undoubtedly spark an endless round of post-judgment motions and additional lawsuits, one of

6  which is already pending. In addition, without an evaluation of the common shares of stock owned by

7  Mr. Barton, the court would be deprived of a meaningful compensatory damage calculation, thus

8  complicating the court's determination on the propriety of the appropriate award of punitive damages.

9    As set forth in page 7 of the court's original Statement of Decision, although respectful of the

10  background and testimony of both experts, the court ultimately rejected plaintiff's expert's (Jaime

11  D'Almeida) opinion that the common shares of stock had a value in excess of $14 million, as well as

12  defendants' expert's (Kevin Henry) opinion that said shares had a value of zero dollars. To assist the

13  court in determining a proper value of the relevant shares, the court invited both counsel to provide

14  names of potential experts for consideration of appointment pursuant to Evidence Code section 730. C.

15  Paul Wazzan, Ph.D. was ultimately chosen by the court from the names provided by both parties.

16    All communication with Dr. Wazzan involved both counsel and the court. Dr. Wazzan and the

17  parties were advised that the court had determined the most appropriate date for conversion of the stock

18  was June 30, 2009. Dr. Wazzan performed his review and then prepared a comprehensive expert report

19  of twelve pages plus numerous exhibits, dated March 8, 2013. Per the agreement with the parties, an

20  opportunity was provided for both counsel to cross-examine Dr. Wazzan, which took place on April 4,

21  2013. Dr. Wazzan then prepared a supplemental report re-affirming his opinion which was provided to

22  the court and both counsel on April 12, 2013. As of that date, the matter stood submitted.

23    On April 15, 2013, the court received a notice of stay of proceedings based on the filing of

24  bankruptcy petitions by both individual defendants. The court subsequently received notice on May 1,

25  2013, that the stay had been lifted by the bankruptcy court. The court now issues the following ruling.

26

27

28

2

## II.  REVISED RULING ON COMMON SHARES OF STOCK VALUATION

With the assistance of Dr. Wazzan, his reports and testimony, while keeping in mind the testimony of both plaintiff's and defendants' experts, the court is now prepared to ascribe a value to the common shares of RPost International stock as of June 30, 2009. The court adopts Dr. Wazzan's opinion and concludes the common stock has a value of $0.64 per share. Since plaintiff owned 6,016,500 shares, the monetary value equals $3,850,560. The court modifies its original Statement of Decision and determines the plaintiff is entitled to a monetary judgment for the value of his converted shares against Terrance Tomkow, Zafar Khan, and RPost International Inc. in the amount of $3,850,560 less $10,500 for a net award of $3,840,060. (This decision has no impact on the award of $100,000 for emotional distress damages as set forth on page 9 of the original Statement of Decision.) Said defendants are jointly and severally liable for the total award of compensatory damages.

The court is satisfied that Dr. Wazzan properly chose and applied the back solve method for his analysis and made reasonable assumptions in order to determine the value of the RPost common shares of stock. These assumptions include a one year time to liquidity and applying a 50% discount for lack of marketability yielding an enterprise value of $33.8 million and thus the common stock would be worth $0.64 per share. (See paragraphs 18, 25, Exhibits 5A and 5B of Dr. Wazzan's March 8, 2013 report.)

The court also considered the fact that defendant RPost had been involved in various market transactions involving its common shares. These include issuance of common shares to Bluewater for services rendered as well as the complexities of the Symantec investment in RPost. Ultimately, these events are too remote in time to have a bearing on the valuation. (See Paragraph 19 of Dr. Wazzan's March 8, 2013 report.) Further, issuance of common shares to Schwartz Communications in exchange for services are not akin to a third party investment and therefore also has no impact on the assessment.

The court's Original Statement of Decision is modified as set forth above and the defendants no longer have any responsibility to restore to plaintiff 6,016,500 shares of RPost International common stock.

3

## III.  PUNITIVE DAMAGES AWARD AGAINST DEFENDANTS TOMKOW AND KHAN

In determining a proper award of punitive damages, the court is mindful of the factors set forth in *State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408 and its progeny. To determine the appropriate sum of punitive damages, the degree of reprehensibility of defendant's conduct is the most important factor. (*Id.* at p. 419.) In addition, as stated in *Bullock v. Philip Morris USA, Inc.*, a defendant's financial condition is "an essential consideration" in calculating a punitive damage award "in order to further the state's legitimate interests in punishment and deterrence." (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, at p. 558.)

Mr. Khan's course of conduct in this case rises to a significant degree of reprehensibility. Although his purported net worth is rather modest, he continues to draw a six figure salary and attributes no value to his RPost holdings (Exhibit 406). The court awards plaintiff Barton punitive damages in the amount of $250,000 from defendant Khan. Overall, Mr. Tomkow's net worth is comparable to that of Mr. Khan (Exhibit 383), but it is the court's conclusion that his conduct toward the plaintiff is less onerous. Although complicit in the conversion of plaintiff's shares, he was more focused on the developmental end of the business and deferred to Mr. Khan on financial matters. The court awards punitive damages to plaintiff Barton in the amount of $150,000 from defendant Tomkow.

4

## IV.  CONCLUSION

Plaintiff is ordered to prepare a judgment consistent with the court's Statement of Decision, Revised Statement of Decision and Ruling on Punitive Damages and submit same directly to Department B for execution and entry forthwith.

To the extent that further transfers of RPost and its related entities assets have occurred, this would properly be dealt with in post-judgment proceedings if plaintiff's collection efforts are thwarted in this case. Based upon the terms of this judgment, the prosecution of a separate lawsuit (YC065259) which challenges the transfer of RPost assets and stock appears to be moot.

DATED:  July 18, 2013

Hon. Stuart M. Rice
Judge of the Superior Court

5

**EXHIBIT D**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**FILED**
LOS ANGELES SUPERIOR COURT

AUG 3 0 2013

John A. Clarke, Clerk

By P. Schultz, Deputy

SUPERIOR COURT OF STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

KENNETH BARTON,

          Plaintiff,

    v.

RPOST INTERNATIONAL
LIMITED; ET AL.

          Defendants.

CASE NO.: YC061581
[Related to Case No. YC065259]

[Assigned to Honorable Stuart M. Rice,
Department "B"]

**JUDGMENT AFTER COURT TRIAL**

Complaint Filed:    January 29, 2010

21       The Court, having completed all phases of the trial of the instant action, having

22  considered all of the relevant testimony and admitted evidence and the argument of

23  counsel, having received and considered all briefing (before, during and after trial), and

24  for the reasons more fully stated in the Court's Ruling on Punitive Damages and

25  Revisions to Statement of Decision dated June 18, 2013 and the Court's August 3, 2012

26  Statement of Decision, each incorporated herein, hereby rules and adjudges upon the

27

28

1

**JUDGMENT AFTER COURT TRIAL**

1    causes of action in Plaintiff's Third Amended Complaint[1] and enters judgment as

2    follows:

3          1.      Judgment is hereby entered IN FAVOR OF Plaintiff Kenneth Barton

4    ("**Barton**") and AGAINST Defendants RPost International Limited, Zafar Khan and

5    Terrance Tomkow, and each of them.

6          2.      Plaintiff Barton is awarded and shall recover from Defendants RPost

7    International Limited, Zafar Khan and Terrance Tomkow, jointly and severally, **(a)**

8    compensatory damages (and restitution pursuant to Business and Professions Code

9    Section 17200) in the net sum of $2,840,060.00 (share value award of $3,850,560.00 less

10   an offset of $1,000,000.00 pursuant to the Court's approval of Defendants' RPost

11   International Limited, Zafar Khan and Terrance Tomkow Motion under C.C.P. Section

12   877(a), and less a $10,500.00 credit, plus **(b)** $100,000.00 in emotional distress

13   damages, <u>and</u> **(c)** pre-judgment interest on the damages in Paragraph 2(a), calculated in

14   accordance with <u>*Newby v. Vroman*</u> (1992) 11 Cal.App.4th 283, 290, from June 30, 2009

15   through the date of entry of Judgment in the sum of $880,021.91, for a total net damage

16   and pre-judgment interest award against each of said Defendants RPost International

17   Limited, Zafar Khan and Terrance Tomkow, jointly and severally, through the date of

18   entry of judgment in the sum of **$3,820,081.91.**

19         3.      In addition, and having proven by clear and convincing evidence that the

20   actions of Defendant Zafar Khan were undertaken with malice, fraud and oppression,

21   Plaintiff Barton is also awarded and shall recover from Defendant Zafar Khan punitive

22   damages in the sum of $250,000.00.

23         4.      In addition, and having proven by clear and convincing evidence that the

24   actions of Defendant Terrance Tomkow were undertaken with malice, fraud and

25

26

27      [1] The Fourth and Sixth Causes of Action were omitted from Plaintiff's Third Amended

28   Complaint in accordance with prior rulings on motions addressed to prior pleadings.

2

**JUDGMENT AFTER COURT TRIAL**

1    oppression, Plaintiff Barton is also awarded and shall recover from Defendant Terrance

2    Tomkow punitive damages in the sum of $150,000.00.

3         5.    Plaintiff Barton shall recover nothing from Defendants Carole Krechman

4    and Ellsworth Roston; Though Defendants Krechman and Roston are prevailing parties,

5    the Court determines that they shall not be and are not awarded costs (other than for their

6    first appearance filing fees and motion filing fees) for the reasons stated by the Court at

7    the August 30, 2013 hearing in this matter.

8         6.    The Court determines and orders that Plaintiff Barton is the prevailing party

9    in the litigation.   Plaintiff Barton is, therefore, also awarded and shall recover from

10   Defendants RPost International Limited, Zafar Khan and Terrance Tomkow, jointly and

11   severally, his costs, per memorandum of costs and any post-judgment order(s) of this

12   Court.  Nothing herein shall preclude Plaintiff Barton from moving the Court for an

13   award of attorneys' fees under law.

14        7.    Both parties have assisted in the drafting of this judgment and approve

15   same as to form and content, without the waiver of any of their rights.

16

17   Dated: August 30, 2013

                                       Hon. Stuart M. Rice

18                                          Judge of the Superior Court

19

20

21

22

23

24

25

26

27

28

3

**JUDGMENT AFTER COURT TRIAL**

EXHIBIT E

FEBRUARY 25, 2011 INFORMATION STATEMENT

# RPOST INTERNATIONAL LIMITED

## February 25, 2011

## Solicitation of Approval of Capitalization Plans

Dear Shareholder,

The purpose of this letter is to solicit your consent to the capitalization plans that include a purchase agreement and an exchange of shares (the "Capitalization Plan").

With your approval, RPost Communications Limited ("RCom"), a newly incorporated Bermuda company, will purchase certain assets and assume certain liabilities of RPost International Limited ("RPost"), a Bermuda company, in exchange for cash and preferred shares of RCom. RPost, the new holder of preferred shares of RCom, will then exchange RCom preferred shares for RPost preferred shares such that all of the preferred shares now held by RPost preferred shareholders are exchanged on a pro-rata basis for preferred shares of RCom.

RCom preferred share rights and preferences are the same as RPost preferred share rights and preferences. Immediately after the Capitalization Plan, each preferred shareholder of RPost will own 10% more equity in RCom, as a percentage of total issued share capital. This will be made possible as some RPost preferred shareholders have accepted to participate in the early liquidation program that has now closed and the Common share structure of RCom is different from that of RPost.

The Capitalization Plan by RCom will include 100% of the assets & liabilities of each of RPost's subsidiaries as well as 100% of RPost System Software and RPost intangible assets (patents, trademarks, domains, and pending patents/trademarks). RCom will assume non-current liabilities of RPost (parent company), valued as of December 31, 2010. RCom will also purchase other intellectual property assets in the collaboration and social media messaging space.

RPost will continue to operate as a company with rights to offer RCom services only to companies with a billing address in Bermuda. RPost will continue to manage the exclusive marketing agreement with the Bermuda Postal Service. RPost will be free to conduct other business as it deems appropriate.

The Board of Directors of RPost ("Board") has approved this Capitalization Plan, and recommends that shareholders consent to this Capitalization Plan.

### Reasons for Capitalization Plan

There are several reasons why the Board of RPost approved this Capitalization Plan transaction, some of which are described below:

1. Many technology companies like RPost achieve liquidity for their investors by acquisition. The due diligence required of acquiring companies necessitates an extended scrutiny of the financial and legal history of any company to be acquired. For this reason it is easier to acquire a new company than an older one. For a technology company, RPost International is an older company: launched just after the collapse of the dot.com boom it is one of a tiny fraction of companies to have survived those difficult times. For the purposes of acquisition, this long history is a burden not an asset. As a new entity, RPost Communications will offer itself as a new company starting with a clean slate.

2. RPost does believe that an IPO may also be a viable path for shareholder liquidity at a time in the future. As a new entity, RPost Communications will be better positioned to adhere to SEC audit requirements for

FEBRUARY 25, 2011 INFORMATION STATEMENT

## Summary of Capitalization Tables

The following capitalization table summarizes the preferred shareholdings in RCom post-transaction with RCom capitalization and incentive share option plans, in comparison to RPost pre-transaction, on a fully diluted basis.

Figure 4.

| Summary Capitalization Table | | | | | |
|---|---|---|---|---|---|
| | RPost | | RCom | | Change |
| Common | 29,630,633 | 71% | 22,750,000 | 59% | -17% |
| *Issued Shares* | 22,694,847 | 54% | 19,450,000 | 50% | -7% |
| *Options Authorized* | 6,935,786 | 17% | 3,300,000 | 9% | -48% |
| | | | | | |
| Preferred | 12,177,859 | 29% | 15,780,089 | 41% | 41% |
| *Symantec Preferred* | 1,641,791 | 4% | 1,641,791 | 4% | 9% |
| *Standard Preferred* | 10,536,068 | 25% | 10,138,298 | 26% | 4% |
| *Standard Preferred Authorized* | | | 4,000,000 | | |
| Total | 41,808,492 | | 38,530,089 | | |

The above capitalization table reflects:

- 10% increase in preferred shareholdings as a percentage of issued shares not accounting for shares cancelled due to preferred shareholders who opted for the early liquidity option which has now closed.
- 8% increase in preferred shareholdings as a percentage of issued shares accounting for preferred shares due to preferred shareholders who opted for the early liquidity option which has now closed.
- 17% increase in preferred shareholdings as a percentage of issued shares on a fully diluted basis accounting for authorized share options.
- 41% increase in preferred shareholdings as a percentage of issued shares on a fully diluted post-financing basis assuming sale of authorized standard preferred shares as part of RCom capital plans.
- The par value for RCom Common shares is $0.001
- The par value for RCom Preferred shares is $0.10

## Representations and Warranties of RPost

RPost hereby makes the following representations and warranties to the shareholder:

Organization and Qualification. RPost is a corporation duly organized, legally existing under the laws of Bermuda and has all requisite corporate power and authority to carry on its business as presently conducted or proposed to be conducted. RPost is duly qualified to transact business in each jurisdiction in which the failure to qualify to do so would have a material adverse effect.

Authorization; Enforcement. RPost has the requisite corporate power and authority to enter into and to consummate the transactions contemplated here and to otherwise carry out its obligations hereunder.

No Conflicts. The execution, delivery and performance of this transaction and the consummation by RPost of the transactions contemplated hereby do not and will not (i) conflict with or violate any provision of RPost's Bye-Laws or other organizational documents (each as amended through the date hereof), or (ii) conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation (with or without notice, lapse of time or both) of, any agreement, credit facility, debt or other instrument (evidencing RPost debt or otherwise) or other understanding to which RPost is a party or by which any property or asset of RPost is bound or affected, or (iii) result in a violation of any law, rule, regulation, order, judgment, injunction, decree or other restriction of any court or governmental authority to which RPost is subject (including federal and state securities laws and regulations), or by which any property or asset of RPost is bound or affected.

# EXHIBIT F



# [R]COM

## RPOST COMMUNICATIONS LIMITED
## THE [R]EGISTERED EMAIL® TECHNOLOGY

CONFIDENTIAL BUSINESS PLAN

AND STANDARD PREFERRED SHARE

FINANCING MEMORANDUM

JULY 2014

Key executives of RCom are noted below.

## Board of Directors

- ❑ **ZAFAR KHAN,** Chairman, Chief Executive Officer, and RCom Director representing common shares. Experience with Goldman Sachs, Deloitte Consulting/Braxton Associates, and US Department of Energy weapons technology transfer. Khan is the inventor of 4 US patents, holds a degree from Wesleyan University (CT), an international business certificate from the Georgetown School of Business, and MBA from The Wharton School at the University of Pennsylvania.
- ❑ **BRIGADIER GENERAL RICHARD W. PRYOR,** (U.S. Air Force, Retired) RCom Director-elect representing independent viewpoints. Former Director of U.S. Defense Communications System, President of ITT WorldCom, Executive Vice President of EDS Communications.
- ❑ **DR. TERRANCE TOMKOW,** RCom Director representing common shares and Chief Technology Officer, RCom. Pioneer of email with over 20 years developing email software, developed the "Intranet" for GeoCities, inventor of 19 patents, university lecturer on logic & artificial intelligence, Ph.D. in philosophy, Cambridge University.
- ❑ **MARK READINGER,** RCom Director representing preferred shares.  Readinger is a global business leader with 20+ years of Fortune 500/multinational leadership including C-level and corporate strategic planning roles at Joy Global, TRW and Texas Instruments.  Readinger was a  White House Fellow in 1988 and served as a Special Assistant to the President on the Economic & Domestic Policy Council; a Cabinet level organization within the White House. Readinger is a graduate of the United States Military Academy at West Point, served in the Army as an officer for six years, and holds an MBA from the University of Louisville.
- ❑ **CAROLE KRECHMAN,** RCom Director. Krechman is currently the Managing Director of Digital Directions Group, an investment-consulting and structured capital development firm founded a decade ago in Beverly Hills. Since the Group's founding in 1998 she has participated in the strategy for the acquisition of over $250 million dollars in private equity with focus on technology and real estate. She has led entrepreneurial ventures in the USA and Asia for over 20 years.

## Key Executives

- ❑ **ZAFAR KHAN,** Chief Executive Officer. *(Biography in Director section).*
- ❑ **TERRANCE TOMKOW,** Chief Technology Officer. *(Biography in Director section).*
- ❑ **LUIS ZAMBRANO,** Vice President, Finance & Operations. Zambrano has several years of strategic planning and corporate finance experience with Telefónica and Citibank. He holds an MBA from The Anderson School at UCLA.
- ❑ **TIM JENKS,** Vice President, Technology. Jenks is in charge of technology operations and network security. He has broad experience deploying complex network infrastructures and holds a Bachelor of Arts degree.
- ❑ **ALEX KHAN,** Vice President, Products & Global Service Delivery.  Khan has been developing internet based services for ten years.  He holds a Bachelor of Science degree from the University of Vermont and a Master's degree in Education from University of Massachusetts, specializing in science and technology.
- ❑ **JAKE FINNELL,** Vice President, Business Development. 15 years of business development experience with nine years in the messaging and email marketplace.

*Note: The listed vice president positions are non-officer positions. Further note, executives listed work for a wholly owned subsidiary of RPost Communications Limited, generally depending on where they reside.*

Sales Team USA & Select Countries

Redacted

Infrastructure USA & Europe

Redacted

Redacted

Software Development Projects

Redacted

Marketing Initiatives

Redacted

Intellectual Property

Redacted

Cash Reserve

Should RCom sell at least 2.04 million preferred shares at $6.90 per share, RCom expects to maintain a cash reserve of up to $2 million during the next 18 months to hedge against unexpected expenses.

## SUMMARY CAPITALIZATION TABLE

### Summary Capitalization Table as of June 30, 2014

|  | Pre-Financing | | Post-Financing | |
|---|---|---|---|---|
| Common Shares Issued | 19,450,000 | 62% | 19,450,000 | 57.4% |
| Preferred Shares Issued | 11,811,729 | 38% | 11,811,729 | 34.9% |
| Authorized for Sale |  |  | 2,600,000 | 7.7% |
| Total | 31,261,729 |  | 33,861,729 | |

*Note: There are additionally 3.3 million Common shares authorized for issue pursuant to the Company's Share Option Plan.*

EXHIBIT G

The Securities and Exchange Commission has not necessarily reviewed the information in this filing and has not determined if it is accurate and complete.
The reader should not assume that the information is accurate and complete.

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549
## FORM D

## Notice of Exempt Offering of Securities

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0076 |
| Estimated average burden hours per response: | 4.00 |

### 1. Issuer's Identity

CIK (Filer ID Number)

Previous Names   [X] None

Entity Type

0001516715

Name of Issuer

RPost Communications Ltd

Jurisdiction of Incorporation/Organization

BERMUDA

Year of Incorporation/Organization

[ ] Over Five Years Ago
[X] Within Last Five Years (Specify Year) 2011
[ ] Yet to Be Formed

[X] Corporation
[ ] Limited Partnership
[ ] Limited Liability Company
[ ] General Partnership
[ ] Business Trust
[ ] Other (Specify)

### 2. Principal Place of Business and Contact Information

Name of Issuer

RPost Communications Ltd

| Street Address 1 | Street Address 2 | | |
|---|---|---|---|
| 69 PITTS BAY ROAD | | | |
| City | State/Province/Country | ZIP/PostalCode | Phone Number of Issuer |
| HAMILTON | BERMUDA | HM 08 | 3103420088 |

### 3. Related Persons

| Last Name | First Name | Middle Name |
|---|---|---|
| Khan | Zafar | |
| Street Address 1 | Street Address 2 | |
| 6033 W Century Blvd | Suite 1278 | |
| City | State/Province/Country | ZIP/PostalCode |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [X] Executive Officer [X] Director [X] Promoter

Clarification of Response (if Necessary):

1/25/2016                                                           SEC FORM D

Address is for subsidiary RPost US Inc

| Last Name | First Name | Middle Name |
|---|---|---|
| Tomkow | Terrance | |
| Street Address 1 | Street Address 2 | |
| 6033 W Century Blvd | Suite 1278 | |
| City | State/Province/Country | ZIP/PostalCode |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [X] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Readinger | Mark | |
| Street Address 1 | Street Address 2 | |
| 6033 W Century Blvd | Suite 1278 | |
| City | State/Province/Country | ZIP/PostalCode |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [ ] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Pryor | Dick | |
| Street Address 1 | Street Address 2 | |
| 6033 W Century Blvd | Suite 1278 | |
| City | State/Province/Country | ZIP/PostalCode |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [ ] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Krechman | Carole | |
| Street Address 1 | Street Address 2 | |
| 6033 W Century Blvd | Suite 1278 | |
| City | State/Province/Country | ZIP/PostalCode |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [ ] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

## 4. Industry Group

[ ] Agriculture

Banking & Financial Services

[ ] Commercial Banking

Health Care

[ ] Biotechnology

[ ] Health Insurance

[ ] Retailing

[ ] Restaurants

1/25/2016                                                    SEC FORM D

- [ ] Insurance
- [ ] Investing
- [ ] Investment Banking
- [ ] Pooled Investment Fund

  Is the issuer registered as
  an investment company under
  the Investment Company
  Act of 1940?

  - [ ] Yes          - [ ] No

- [ ] Other Banking & Financial Services
- [ ] Business Services

  Energy

  - [ ] Coal Mining
  - [ ] Electric Utilities
  - [ ] Energy Conservation
  - [ ] Environmental Services
  - [ ] Oil & Gas
  - [ ] Other Energy

- [ ] Hospitals & Physicians
- [ ] Pharmaceuticals
- [ ] Other Health Care
- [ ] Manufacturing

  Real Estate

  - [ ] Commercial
  - [ ] Construction
  - [ ] REITS & Finance
  - [ ] Residential
  - [ ] Other Real Estate

Technology

- [ ] Computers
- [ ] Telecommunications
- [x] Other Technology

Travel

- [ ] Airlines & Airports
- [ ] Lodging & Conventions
- [ ] Tourism & Travel Services
- [ ] Other Travel

- [ ] Other

---

## 5. Issuer Size

| Revenue Range | OR | Aggregate Net Asset Value Range |
|---|---|---|
| [ ] No Revenues | | [ ] No Aggregate Net Asset Value |
| [ ] $1 - $1,000,000 | | [ ] $1 - $5,000,000 |
| [ ] $1,000,001 - $5,000,000 | | [ ] $5,000,001 - $25,000,000 |
| [ ] $5,000,001 - $25,000,000 | | [ ] $25,000,001 - $50,000,000 |
| [ ] $25,000,001 - $100,000,000 | | [ ] $50,000,001 - $100,000,000 |
| [ ] Over $100,000,000 | | [ ] Over $100,000,000 |
| [x] Decline to Disclose | | [ ] Decline to Disclose |
| [ ] Not Applicable | | [ ] Not Applicable |

---

## 6. Federal Exemption(s) and Exclusion(s) Claimed (select all that apply)

- [ ] Rule 504(b)(1) (not (i), (ii) or (iii))
- [ ] Rule 504 (b)(1)(i)
- [ ] Rule 504 (b)(1)(ii)
- [ ] Rule 504 (b)(1)(iii)

- [ ] Rule 505
- [x] Rule 506
- [ ] Securities Act Section 4(5)
- [ ] Investment Company Act Section 3(c)

  - [ ] Section 3(c)(1)          - [ ] Section 3(c)(9)
  - [ ]                          - [ ]

1/25/2016            SEC FORM D

| | | |
|---|---|---|
| ☐ Section 3(c)(2) | ☐ Section 3(c)(10) | |
| ☐ Section 3(c)(3) | ☐ Section 3(c)(11) | |
| ☐ Section 3(c)(4) | ☐ Section 3(c)(12) | |
| ☐ Section 3(c)(5) | ☐ Section 3(c)(13) | |
| ☐ Section 3(c)(6) | ☐ Section 3(c)(14) | |
| ☐ Section 3(c)(7) | | |

## 7. Type of Filing

☒ New Notice   Date of First Sale 2013-08-19   ☐ First Sale Yet to Occur

☐ Amendment

## 8. Duration of Offering

Does the Issuer intend this offering to last more than one year?   ☒ Yes ☐ No

## 9. Type(s) of Securities Offered (select all that apply)

☒ Equity

☐ Debt

☐ Option, Warrant or Other Right to Acquire Another Security

☐ Security to be Acquired Upon Exercise of Option, Warrant or Other Right to Acquire Security

☐ Pooled Investment Fund Interests

☐ Tenant-in-Common Securities

☐ Mineral Property Securities

☐ Other (describe)

## 10. Business Combination Transaction

Is this offering being made in connection with a business combination transaction, such as a merger, acquisition or exchange offer?   ☐ Yes ☒ No

Clarification of Response (if Necessary):

## 11. Minimum Investment

Minimum investment accepted from any outside investor $31,250 USD

## 12. Sales Compensation

| Recipient | Recipient CRD Number ☒ None |
|---|---|
| (Associated) Broker or Dealer ☒ None | (Associated) Broker or Dealer CRD Number ☒ None |
| Street Address 1 | Street Address 2 | |
| City | State/Province/Country | ZIP/Postal Code |

State(s) of Solicitation (select all that apply)
Check "All States" or check individual   ☐ All States   ☐ Foreign/non-US

1/25/2016                                                    SEC FORM D

States                              ⊔

---

**13. Offering and Sales Amounts**

Total Offering Amount      $18,000,000 USD  or ☐ Indefinite

Total Amount Sold              $187,500 USD

Total Remaining to be Sold $17,812,500 USD  or ☐ Indefinite

Clarification of Response (if Necessary):

---

**14. Investors**

☐ Select if securities in the offering have been or may be sold to persons who do not qualify as accredited investors, and enter the number of such non-accredited investors who already have invested in the offering.                                              [_____]

Regardless of whether securities in the offering have been or may be sold to persons who do not qualify as accredited investors, enter the total number of investors who already have invested in the offering:                                                          [2_____]

---

**15. Sales Commissions & Finder's Fees Expenses**

Provide separately the amounts of sales commissions and finders fees expenses, if any. If the amount of an expenditure is not known, provide an estimate and check the box next to the amount.

Sales Commissions $0 USD ☒ Estimate

Finders' Fees $0 USD ☒ Estimate

Clarification of Response (if Necessary):

---

**16. Use of Proceeds**

Provide the amount of the gross proceeds of the offering that has been or is proposed to be used for payments to any of the persons required to be named as executive officers, directors or promoters in response to Item 3 above. If the amount is unknown, provide an estimate and check the box next to the amount.

$0 USD ☒ Estimate

Clarification of Response (if Necessary):

---

**Signature and Submission**

**Please verify the information you have entered and review the Terms of Submission below before signing and clicking SUBMIT below to file this notice.**

**Terms of Submission**

In submitting this notice, each issuer named above is:

- Notifying the SEC and/or each State in which this notice is filed of the offering of securities described and undertaking to furnish them, upon written request, in the accordance with applicable law, the information furnished to offerees.*

- Irrevocably appointing each of the Secretary of the SEC and, the Securities Administrator or other legally designated officer of the State in which the issuer maintains its principal place of business and any State in which this notice is filed, as its agents for service of process, and agreeing that these persons may accept service on its behalf, of any notice, process or pleading, and further agreeing that such service may be made

by registered or certified mail, in any Federal or state action, administrative proceeding, or arbitration brought against it in any place subject to the jurisdiction of the United States, if the action, proceeding or arbitration (a) arises out of any activity in connection with the offering of securities that is the subject of this notice, and (b) is founded, directly or indirectly, upon the provisions of:  (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these statutes, or (ii) the laws of the State in which the issuer maintains its principal place of business or any State in which this notice is filed.

- Certifying that, if the issuer is claiming a Rule 505 exemption, the issuer is not disqualified from relying on Rule 505 for one of the reasons stated in Rule 505(b)(2)(iii).

Each Issuer identified above has read this notice, knows the contents to be true, and has duly caused this notice to be signed on its behalf by the undersigned duly authorized person.

For signature, type in the signer's name or other letters or characters adopted or authorized as the signer's signature.

| Issuer | Signature | Name of Signer | Title | Date |
|---|---|---|---|---|
| RPost Communications Ltd | ZK | Zafar Khan | Chariman and Chief Executive Officer | 2013-09-03 |

*Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.*

* This undertaking does not affect any limits Section 102(a) of the National Securities Markets Improvement Act of 1996 ("NSMIA") [Pub. L. No. 104-290, 110 Stat. 3416 (Oct. 11, 1996)] imposes on the ability of States to require information. As a result, if the securities that are the subject of this Form D are "covered securities" for purposes of NSMIA, whether in all instances or due to the nature of the offering that is the subject of this Form D, States cannot routinely require offering materials under this undertaking or otherwise and can require offering materials only to the extent NSMIA permits them to do so under NSMIA's preservation of their anti-fraud authority.

# EXHIBIT H

The Securities and Exchange Commission has not necessarily reviewed the information in this filing and has not determined if it is accurate and complete.
The reader should not assume that the information is accurate and complete.

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549
## FORM D

### Notice of Exempt Offering of Securities

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0076 |
| Estimated average burden hours per response: | 4.00 |

---

## 1. Issuer's Identity

CIK (Filer ID Number)

Previous Names  [X] None

Entity Type

0001516715

Name of Issuer

RPost Communications Ltd

Jurisdiction of Incorporation/Organization

BERMUDA

Year of Incorporation/Organization

[ ] Over Five Years Ago

[X] Within Last Five Years (Specify Year) 2011

[ ] Yet to Be Formed

[X] Corporation

[ ] Limited Partnership

[ ] Limited Liability Company

[ ] General Partnership

[ ] Business Trust

[ ] Other (Specify)

---

## 2. Principal Place of Business and Contact Information

Name of Issuer

RPost Communications Ltd

| Street Address 1 | | Street Address 2 | |
|---|---|---|---|
| 69, PITTS BAY ROAD | | | |
| City | State/Province/Country | ZIP/PostalCode | Phone Number of Issuer |
| PEMBROKE | BERMUDA | HM 08 | 3103420088 |

---

## 3. Related Persons

| Last Name | First Name | Middle Name |
|---|---|---|
| Khan | Zafar | |

| Street Address 1 | Street Address 2 | |
|---|---|---|
| 6033 W Century Blvd | Suite 1278 | |
| City | State/Province/Country | ZIP/PostalCode |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [X] Executive Officer [X] Director [X] Promoter

Clarification of Response (if Necessary):

1/25/2016                                          SEC FORM D/A

Address is for subsidiary RPost US Inc

| Last Name | First Name | Middle Name |
|---|---|---|
| Tomkow | Terrance | |
| **Street Address 1** | **Street Address 2** | |
| 6033 W Century Blvd | Suite 1278 | |
| **City** | **State/Province/Country** | **ZIP/PostalCode** |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [X] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Readinger | Mark | |
| **Street Address 1** | **Street Address 2** | |
| 6033 W Century Blvd | Suite 1278 | |
| **City** | **State/Province/Country** | **ZIP/PostalCode** |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [ ] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Pryor | Dick | |
| **Street Address 1** | **Street Address 2** | |
| 6033 W Century Blvd | Suite 1278 | |
| **City** | **State/Province/Country** | **ZIP/PostalCode** |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [ ] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Krechman | Carole | |
| **Street Address 1** | **Street Address 2** | |
| 6033 W Century Blvd | Suite 1278 | |
| **City** | **State/Province/Country** | **ZIP/PostalCode** |
| Los Angeles | CALIFORNIA | 90045 |

Relationship: [ ] Executive Officer [X] Director [ ] Promoter

Clarification of Response (if Necessary):

## 4. Industry Group

[ ] Agriculture

**Banking & Financial Services**

    [ ] Commercial Banking

**Health Care**

    [ ] Biotechnology

    [ ] Health Insurance

[ ] Retailing

[ ] Restaurants

-083-

1/25/2016                                                SEC FORM D/A

- [ ] Insurance
- [ ] Investing
- [ ] Investment Banking
- [ ] Pooled Investment Fund

  Is the issuer registered as an investment company under the Investment Company Act of 1940?

  - [ ] Yes          - [ ] No

- [ ] Other Banking & Financial Services
- [ ] Business Services

  Energy

  - [ ] Coal Mining
  - [ ] Electric Utilities
  - [ ] Energy Conservation
  - [ ] Environmental Services
  - [ ] Oil & Gas
  - [ ] Other Energy

- [ ] Hospitals & Physicians
- [ ] Pharmaceuticals
- [ ] Other Health Care
- [ ] Manufacturing

  Real Estate

  - [ ] Commercial
  - [ ] Construction
  - [ ] REITS & Finance
  - [ ] Residential
  - [ ] Other Real Estate

Technology

- [ ] Computers
- [ ] Telecommunications
- [x] Other Technology

Travel

- [ ] Airlines & Airports
- [ ] Lodging & Conventions
- [ ] Tourism & Travel Services
- [ ] Other Travel

- [ ] Other

## 5. Issuer Size

| Revenue Range | OR | Aggregate Net Asset Value Range |
|---|---|---|
| [ ] No Revenues | | [ ] No Aggregate Net Asset Value |
| [ ] $1 - $1,000,000 | | [ ] $1 - $5,000,000 |
| [ ] $1,000,001 - $5,000,000 | | [ ] $5,000,001 - $25,000,000 |
| [ ] $5,000,001 - $25,000,000 | | [ ] $25,000,001 - $50,000,000 |
| [ ] $25,000,001 - $100,000,000 | | [ ] $50,000,001 - $100,000,000 |
| [ ] Over $100,000,000 | | [ ] Over $100,000,000 |
| [x] Decline to Disclose | | [ ] Decline to Disclose |
| [ ] Not Applicable | | [ ] Not Applicable |

## 6. Federal Exemption(s) and Exclusion(s) Claimed (select all that apply)

- [ ] Rule 504(b)(1) (not (i), (ii) or (iii))
- [ ] Rule 504 (b)(1)(i)
- [ ] Rule 504 (b)(1)(ii)
- [ ] Rule 504 (b)(1)(iii)
- [ ] Rule 505

- [ ] Investment Company Act Section 3(c)
- [ ] Section 3(c)(1)
- [ ] Section 3(c)(2)
- [ ] Section 3(c)(3)
- [ ]

- [ ] Section 3(c)(9)
- [ ] Section 3(c)(10)
- [ ] Section 3(c)(11)
- [ ]

1/25/2016                                                                                                      SEC FORM D/A

| | |
|---|---|
| ☐ | |
| ☒ Rule 506(b) | ☐ Section 3(c)(4)     ☐ Section 3(c)(12) |
| ☐ Rule 506(c) | ☐ Section 3(c)(5)     ☐ Section 3(c)(13) |
| ☐ Securities Act Section 4(a)(5) | ☐ Section 3(c)(6)     ☐ Section 3(c)(14) |
| | ☐ Section 3(c)(7) |

---

## 7. Type of Filing

☐ New Notice    Date of First Sale 2013-08-19  ☐ First Sale Yet to Occur
☒ Amendment

---

## 8. Duration of Offering

Does the Issuer intend this offering to last more than one year?  ☒ Yes ☐ No

---

## 9. Type(s) of Securities Offered (select all that apply)

| | |
|---|---|
| ☒ Equity | ☐ Pooled Investment Fund Interests |
| ☐ Debt | ☐ Tenant-in-Common Securities |
| ☐ Option, Warrant or Other Right to Acquire Another Security | ☐ Mineral Property Securities |
| ☐ Security to be Acquired Upon Exercise of Option, Warrant or Other Right to Acquire Security | ☐ Other (describe) |

---

## 10. Business Combination Transaction

Is this offering being made in connection with a business combination transaction, such as a merger, acquisition or exchange offer?    ☐ Yes ☒ No

Clarification of Response (if Necessary):

---

## 11. Minimum Investment

Minimum investment accepted from any outside investor $34,500 USD

---

## 12. Sales Compensation

| | |
|---|---|
| Recipient | Recipient CRD Number ☒ None |
| (Associated) Broker or Dealer ☒ None | (Associated) Broker or Dealer CRD Number ☒ None |
| Street Address 1 | Street Address 2 |
| City | State/Province/Country            ZIP/Postal Code |
| State(s) of Solicitation (select all that apply) Check "All States" or check individual States | ☐ All States    ☐ Foreign/non-US |

---

## 13. Offering and Sales Amounts

-085-

1/25/2016                                                                SEC FORM D/A

Total Offering Amount        $18,000,000 USD  or ☐ Indefinite

Total Amount Sold            $3,157,811 USD

Total Remaining to be Sold $14,842,189 USD  or ☐ Indefinite

Clarification of Response (if Necessary):

## 14. Investors

☐ Select if securities in the offering have been or may be sold to persons who do not qualify as accredited investors, and enter the number of such non-accredited investors who already have invested in the offering.

Regardless of whether securities in the offering have been or may be sold to persons who do not qualify as accredited investors, enter the total number of investors who already have invested in the offering:

44

## 15. Sales Commissions & Finder's Fees Expenses

Provide separately the amounts of sales commissions and finders fees expenses, if any. If the amount of an expenditure is not known, provide an estimate and check the box next to the amount.

Sales Commissions $0 USD ☒ Estimate

Finders' Fees $0 USD ☒ Estimate

Clarification of Response (if Necessary):

## 16. Use of Proceeds

Provide the amount of the gross proceeds of the offering that has been or is proposed to be used for payments to any of the persons required to be named as executive officers, directors or promoters in response to Item 3 above. If the amount is unknown, provide an estimate and check the box next to the amount.

$0 USD ☒ Estimate

Clarification of Response (if Necessary):

## Signature and Submission

**Please verify the information you have entered and review the Terms of Submission below before signing and clicking SUBMIT below to file this notice.**

### Terms of Submission

In submitting this notice, each issuer named above is:

- Notifying the SEC and/or each State in which this notice is filed of the offering of securities described and undertaking to furnish them, upon written request, in the accordance with applicable law, the information furnished to offerees.*

- Irrevocably appointing each of the Secretary of the SEC and, the Securities Administrator or other legally designated officer of the State in which the issuer maintains its principal place of business and any State in which this notice is filed, as its agents for service of process, and agreeing that these persons may accept service on its behalf, of any notice, process or pleading, and further agreeing that such service may be made by registered or certified mail, in any Federal or state action, administrative proceeding, or arbitration brought against it in any place subject to the jurisdiction of the United States, if the action, proceeding or arbitration (a) arises out of any activity in connection with the offering of securities that is the subject of this notice, and (b) is founded, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment

Advisers Act of 1940, or any rule or regulation under any of these statutes, or (ii) the laws of the State in which the issuer maintains its principal place of business or any State in which this notice is filed.

- Certifying that, if the issuer is claiming a Regulation D exemption for the offering, the issuer is not disqualified from relying on Regulation D for one of the reasons stated in Rule 505(b)(2)(iii) or Rule 506(d).

Each Issuer identified above has read this notice, knows the contents to be true, and has duly caused this notice to be signed on its behalf by the undersigned duly authorized person.

For signature, type in the signer's name or other letters or characters adopted or authorized as the signer's signature.

| Issuer | Signature | Name of Signer | Title | Date |
|---|---|---|---|---|
| RPost Communications Ltd | ZK | Zafar Khan | Chariman and Chief Executive Officer | 2014-10-23 |

*Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.*

* This undertaking does not affect any limits Section 102(a) of the National Securities Markets Improvement Act of 1996 ("NSMIA") [Pub. L. No. 104-290, 110 Stat. 3416 (Oct. 11, 1996)] imposes on the ability of States to require information. As a result, if the securities that are the subject of this Form D are "covered securities" for purposes of NSMIA, whether in all instances or due to the nature of the offering that is the subject of this Form D, States cannot routinely require offering materials under this undertaking or otherwise and can require offering materials only to the extent NSMIA permits them to do so under NSMIA's preservation of their anti-fraud authority.